## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RONALD BIANCHI, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>*v.*<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>: Civil Action No. 17-cv-1263 (CCC) (MF)<br>:<br>: <u>Motion Return Date</u>: May 21, 2018<br>:<br>: <u>Oral Argument Requested</u><br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION
## COMPLAINT

**TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP**

James J. O'Hara
3 Becker Farm Road
Fourth Floor
Roseland, New Jersey 07068
Tel. 973-623-7041
Fax 973-623-7780
johara@tompkinsmcguire.com

**SQUIRE PATTON BOGGS (US) LLP**

Sean P. Neafsey
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
Tel. 973-848-5600
Fax 973-848-5601
sean.neafsey@squirepb.com

Philip M. Oliss (admitted *pro hac vice*)
Bruce Khula (admitted *pro hac vice*)
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Tel. 216-479-8500
Fax 216-479-8780
philip.oliss@squirepb.com
bruce.khula@squirepb.com

Attorneys for Defendant SAMSUNG
ELECTRONICS AMERICA, INC.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................v

I.      PRELIMINARY STATEMENT ...............................................................1

II.     BACKGROUND .......................................................................................3

        A.      Plaintiffs' Alleged Pre-Purchase Research .....................................3

        B.      The Refrigerators' Limited Warranties............................................3

        C.      Plaintiffs' Allegations Regarding Their Refrigerators.....................4

                1.      The Bianchis (Virginia) ........................................................4

                2.      The Marino Plaintiffs (Florida).............................................5

                3.      The Castelos (California)......................................................6

                4.      The Mahoneys (New Jersey) .................................................6

                5.      The Cecconis (Pennsylvania)................................................7

                6.      The Kauffman Plaintiffs (Pennsylvania) ..............................7

        D.      Plaintiffs' Allegations Regarding TSB 2014 and TSB 2015 .................8

III.    ARGUMENT.............................................................................................9

        A.      Plaintiffs Fail to State a Claim for Unjust Enrichment Because of
                the Limited Warranty, Plaintiffs' Continued Use of Their
                Refrigerators, and for Other Independent Reasons (Count I) (*All
                Plaintiffs*)......................................................................................10

        B.      The Mahoneys' Express Warranty Claim Must Be Dismissed
                (Count XV) ...................................................................................12

                1.      SEA Never Denied Any Timely Warranty Claim by the
                        Mahoneys...........................................................................12

                2.      The Mahoneys' Claim Also Fails for Lack of Pre-suit
                        Notice..................................................................................13

                3.      Any Claim Under New Jersey Statute § 12A:2A:210 Fails
                        Because the Mahoneys Do Not Allege that They Leased
                        Their Refrigerator ..............................................................14

                4.      The Limited Warranty Is Not Unconscionable and Must Be
                        Enforced..............................................................................14

        C.      Plaintiffs' Implied Warranty Claims Must Be Dismissed (Counts
                II, VIII, X, XIII, XVI and XVII) (*All Plaintiffs*)........................16

1.      Because the Implied Warranty of Merchantability Is Limited to One Year by the Limited Warranty, the Claims of the Bianchis, Castelos, Cecconis and Marino Plaintiffs Fail ...............................................................................................17

2.      Plaintiffs' Implied Warranty Claims Must Be Dismissed Because their Refrigerators Kept Food Cold and Made Ice at the Time They Were Delivered.....................................................19

3.      The Castelos' Implied Warranty Claim Under the Song-Beverly Consumer Warranty Act Must Also Be Dismissed.........20

4.      The Implied Warranty Claims of the Castelos, Cecconis, Kauffman Plaintiffs and Mahoneys Fail for Lack of Pre-Suit Notice ..................................................................................22

5.      Since the Castelos, Cecconis, Kauffman Plaintiffs and Marino Plaintiffs Allege No Privity with SEA, Their Implied Warranty Claims Fail .......................................................22

6.      To the Extent that Plaintiffs Base Their Express or Implied Warranty Claims on UCC Provisions Applicable to Leased Goods, They Fail Since None of the Plaintiffs Allege that They Leased Their Refrigerators (Counts VIII, X, XVI and XVIIII) ..............................................................................................23

D.      Plaintiffs State No Strict Liability Claims As They Allege Only Economic Damages and Fail to Plead Any Defect, and Because Such Claims Are Precluded by Certain Plaintiffs' Home States' Laws (Counts IV and VI) (*All Plaintiffs*).....................................24

1.      The Economic Loss Doctrine Independently Bars All Plaintiffs' Strict Liability Tort Claims (Counts IV and VI) (*All Plaintiffs*)..................................................................................24

2.      Plaintiffs Plead No Design Defect Claim (Count IV) (*Castelos, Cecconis, Kauffman Plaintiffs, Mahoneys and Marino Plaintiffs*)..........................................................................25

3.      Certain Plaintiffs' Design Defect Claims Are Fatally Deficient Under Their Respective State Laws (Count IV) ...........27

a.      The Florida and Pennsylvania Plaintiffs' claims fail because they do not allege the Refrigerators are "unreasonably dangerous" (*Cecconis, Kauffman Plaintiffs and Marino Plaintiffs*)........................................27

b.      The New Jersey and Pennsylvania Plaintiffs' claims fail since they do not sufficiently allege the existence of an alternative design for their Refrigerators (*Cecconis, Kauffman Plaintiffs and Mahoneys*)...........................................................................28

ii

|  |  | c. | The Mahoneys' claims are barred by the New Jersey Products Liability Act | 29 |

|  |  | d. | The Castelos plead no claim under either of the design-defect theories recognized under California law | 29 |

|  | 4. |  | Virginia Does Not Recognize Strict Products Liability Claims (Counts IV and VI) (*Bianchis*) | 30 |

| E. |  |  | The FAC States No Claim for Violation of Any State Statutory Consumer Protection Law (Counts VII, IX, XIV and XVII) (*All Plaintiffs*) | 31 |

|  | 1. |  | None of the Statutory Consumer Claims Satisfies Rule 9(b) (Counts VII, IX, XIV and XVII) (*All Plaintiffs*) | 32 |

|  | 2. |  | The Bianchis' VCPA Claim Must Be Dismissed Because They Plead No Misrepresentations or Omission, Do Not Allege Reliance, and Plead No Deliberate, Knowing Acts by SEA (Count VII) | 34 |

|  | 3. |  | The Marino Plaintiffs' FDUTPA Claim Fails Because They Allege No Facts Showing a Deceptive Act, Causation or Actual Damages (Count IX) | 36 |

|  | 4. |  | The Mahoneys' NJCFA Claim Fails to Plead an Ascertainable Loss or Actionable Misrepresentation or Omission (Count XIV) | 38 |

|  | 5. |  | The Cecconis and Kauffman Plaintiffs' UTPCPL Claim Is Barred by the Economic Loss Doctrine, and Fails to Allege Reliance, Causation, or Deceptive Conduct (Count XVII) | 41 |

|  | 6. |  | The Castelos Allege No Facts Showing Violation of California's Consumer Fraud Statutes (Counts XI and XII) | 43 |

|  |  | a. | The Castelos' CLRA claim fails for lack of misrepresentation and reliance, nor can they seek damages under the CLRA for failure to provide SEA with prelitigation notice | 43 |

|  |  | b. | The Castelos' UCL claim must be dismissed for lack of pre-purchase exposure to representations by SEA, and also because the Castelos allege no facts satisfying any of the UCL's three prongs | 46 |

| F. |  |  | Plaintiffs Fail to Plead Key Elements of Fraudulent Concealment, Much Less Satisfy the Particularity Required Under Rule 9(b) (Count V) (*All Plaintiffs*) | 47 |

|  | 1. |  | Plaintiffs' fraudulent concealment claim does not satisfy Rule 9(b) | 48 |

2.    Plaintiffs plead no facts showing that SEA engaged in knowing, intentional misrepresentation, that SEA owed Plaintiffs a duty to disclose, or that Plaintiffs relied upon any false representation by SEA .....................................................49

a.    Plaintiffs allege no false representation by SEA...............49

b.    Plaintiffs allege no facts showing that SEA had pre-purchase knowledge of the Refrigerators' purported defects ............................................................................50

c.    Plaintiffs allege no facts showing SEA had intent to conceal ..............................................................................52

d.    Plaintiffs do not allege reliance on any SEA misrepresentation ..............................................................52

e.    Plaintiffs have not shown that SEA owed them a duty to disclose ...............................................................53

G.    Plaintiffs' Claim for Declaratory and Injunctive Relief Must Be Dismissed (Count III) (*All Plaintiffs*) ........................................................55

IV.    CONCLUSION...................................................................................................57

iv

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.S. v. Harrison Twp. Bd. of Educ.*,
  66 F. Supp. 3d 539 (D.N.J. 2014) ..........................................................57

*Alban v. BMW of N. Am., LLC*,
  No. 09-5398, 2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept 8, 2010) ........................................40

*Alban v. BMW of N. Am., LLC*,
  No. 09-5398, 2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011)......................... 15-16, 51

*Allen v. Debello*,
  No. 16-2644, 2017 U.S. App. LEXIS 11405 (3d Cir. June 27, 2017).....................................30

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
  905 F. Supp. 2d 1334 (S.D. Fla. 2012) ..................................................10

*Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*,
  678 F. Supp. 2d 328 (E.D. Pa. 2009) ....................................................23

*Am. Suzuki Motor Corp. v. Super. Court*,
  37 Cal. App. 4th 1291 (Cal. App. 1995)..................................................21

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) .......................................... 24-25

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ......................................................48

*Argabright v. Rheem Mfg. Co.*,
  201 F. Supp. 3d 578 (D.N.J. 2016) .............................................. 14-16

*Axalta Coating Sys., LLC v. Midwest II, Inc.*,
  217 F. Supp. 3d 813 (E.D. Pa. 2016) ............................................ 14-15

*Bailey v. Janssen Pharm., Inc.*,
  288 F. App'x 597 (11th Cir. 2008) .......................................................27

*Bayliner Marine Corp. v. Crow*,
  509 S.E.2d 499 (Va. 1999)...................................................................19

*Baynes v. George Mason Funeral Home, Inc.*,
  No. 09-153, 2011 U.S. Dist. LEXIS 59220 (W.D. Pa. June 2, 2011) ....................................41

v

*Beausoleil v. Peterbilt Motors Co.*,
    No. 10-222, 2010 U.S. Dist. LEXIS 58445 (E.D. Va. June 11, 2010) .................................17

*Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*,
    No. 10-22153, 2011 U.S. Dist. LEXIS 108720 (S.D. Fla. Sep. 23, 2011) .............................36

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................36, 48

*Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*,
    776 F.2d 1174 (3d Cir. 1985)............................................................................................10

*Birdsong v. Apple Inc.*,
    590 F.3d 955 (9th Cir. 2009) ..........................................................................................21

*Bosland v. Warnock Dodge, Inc.*,
    964 A.2d 741 (N.J. 2009)...................................................................................................38

*Brennan v. Dow Chem. Co.*,
    613 So. 2d 131 (Fla. App. 1993)......................................................................................10

*Brosville Cmty. Fire Dep't, Inc. v. Navistar, Inc.*,
    No. 14-09, 2014 U.S. Dist. LEXIS 173422 (W.D. Va. Dec. 16, 2014)................................17

*Brown v. Philip Morris Inc.*,
    228 F. Supp. 2d 506 (D.N.J. 2002) ...................................................................................29

*Burtt v. Ford Motor Co.*,
    No. 07-38, 2008 U.S. Dist. LEXIS 9657 (W.D. Va. Feb. 11, 2008) ...................................15

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007).............................................................................45

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ................................................................................................46

*In re Chinese Drywall Cases*,
    80 Va. Cir. 69 (Va. Cir. Ct. 2010)......................................................................................11

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .........................................................................................23

*Cooper v. Samsung Elecs. Am., Inc.*,
    No. 07-3853, 2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 30, 2008)...................................10

*Cross v. S.V.H.H. Cable Acquisition Ltd. P'ship*,
    No. 07-660, 1995 U.S. Dist. LEXIS 18659 (W.D. Va. Nov. 2, 1995) ...................................31

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (Cal. App. 2006)................................................................10

*DeHart v. HomEq Serv. Corp.*,
    679 F. App'x 184 (3d Cir. 2017) ........................................................................42

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
    989 So. 2d 696 (Fla. App. 2008)........................................................................10

*Dilley v. C.R. Bard, Inc.*,
    No. 14-1795, 2014 U.S. Dist. LEXIS 47066 (C.D. Cal. Apr. 3, 2014) ..................................25

*DiMartino v. BMW of N. Am., LLC*,
    No. 15-8447, 2016 U.S. Dist. LEXIS 106138 (D.N.J. Aug. 11, 2016) ..................................34

*Duffy v. Charles Schwab & Co.*,
    123 F. Supp. 2d 802 (D.N.J. 2000) ....................................................................10

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (Cal. App. 2010) .......................................................... 10-11

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995)..............................................................................13

*East West, LLC v. Rahman*,
    873 F. Supp. 2d 721 (E.D. Va. 2012) ..................................................................36

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006)......................................................................................57

*Family Boating & Marine Ctrs. of Fla., Inc., v. Bell*,
    779 So. 2d 402 (Fla. App. 2000)........................................................................17

*Fishman v. GE Co.*,
    No. 12-585, 2014 U.S. Dist. LEXIS 56144 (D.N.J. Apr. 23, 2014)..........................................4

*In re Fla. Cement & Concrete Antitrust Litig.*,
    746 F. Supp. 2d 1291 (S.D. Fla. 2010) ................................................................37

*In re Ford Tailgate Litig.*,
    No. 11-2953, 2015 U.S. Dist. LEXIS 159534 (N.D. Cal. Nov. 25, 2015) ............................37

*Fravel v. Ford Motor Co.*,
    973 F. Supp. 2d 651 (W.D. Va. 2013) ..................................................................34

*Gentry v. Hyundai Motor Am., Inc.*,
    No. 13-30, 2017 U.S. Dist. LEXIS 8609 (W.D. Va. Jan. 23, 2017)........................................35

*G.M. Acceptance Corp. v. Laesser*,
   718 So. 2d 276 (Fla. App. 1998)..........................................................................37

*Gomez v. Carmax Auto Superstores Cal., LLC*,
   No. 14-9019, 2015 U.S. Dist. LEXIS 8801 (C.D. Cal. Jan. 22, 2015) .............................32, 34

*Gomez v. Pfizer, Inc.*,
   675 F. Supp. 2d 1159 (S.D. Fla. 2009) ................................................................26

*Grant v. Kingswood Apts.*,
   No. 01-1523, 2001 U.S. Dist. LEXIS 23927 (E.D. Pa. Oct. 15, 2001) ....................................42

*Green v. G.M. Corp.*,
   No. A-2831-01T5, 2003 N.J. Super. Unpub. LEXIS 13 (N.J. Super. Ct. July 10, 2008).........53

*Green v. Green Mt. Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011).........................................................................19-20

*Greene v BMW of N. Am., LLC*,
   No. 11-4220, 2012 U.S. Dist. LEXIS 168695 (D.N.J. Nov. 28, 2012) ....................................19

*Greene v. Boddie-Noell Enters., Inc.*,
   966 F. Supp. 416 (W.D. Va. 1997) .....................................................................19

*Hall v. SeaWorld Entm't, Inc.*,
   No. 15-660, 2015 U.S. Dist. LEXIS 174294 (S.D. Cal. Dec. 23, 2015) .................................46

*Hammer v. Vital Pharms., Inc.*,
   No. 11-4124, 2012 U.S. Dist. LEXIS 40632 (D.N.J. Mar. 26, 2012)..............................13, 22

*Harris v. Green Tree Fin. Corp.*,
   183 F.3d 173 (3d Cir. 1999).............................................................................14

*Harris v. T.I., Inc.*,
   413 S.E.2d 605 (Va. 1992)..............................................................................30

*Herremans v. BMW of N. Am., LLC*,
   No. 14-02363, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014)...............................45

*Hughes v. Panasonic Cons. Elecs. Co.*,
   No. 10-846, 2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011).................11-12, 32, 37-40

*Hunt v. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008)............................................................................42

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) .................................................................44

*Janda v. T-Mobile, USA, Inc.*,
    No. 05-03729, 2008 U.S. Dist. LEXIS 93399 (N.D. Cal. Nov. 7, 2008) ......................... 44-46

*Johnson v. Draeger Safety Diagnostics, Inc.*,
    No. 13-2439, 2013 U.S. Dist. LEXIS 101188 (D.N.J. July 19, 2013) ............................. 28-29

*Jones v. Bank of Am. Corp.*,
    No. 09-162, 2010 U.S. Dist. LEXIS 142918 (E.D. Va. Aug. 24, 2010)................................10

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ................................................................................ 42-43

*Kagan v. Harley Davidson, Inc.*,
    No. 07-0694, 2008 U.S. Dist. LEXIS 63932 (E.D. Pa. Aug. 20, 2008) ................................27

*Kais v. Mansiana Ocean Residences, LLC*,
    No. 08-21492, 2009 U.S. Dist. LEXIS 25417 (S.D. Fla. Mar. 26, 2009)................................37

*Karlson v. Dematic Corp.*,
    No. 16-321, 2016 U.S. Dist. LEXIS 112668 (D.N.J. Aug. 24, 2016) ....................................29

*Katsiavrias v. Cendant Corp.*,
    No. 06-4465, 2009 U.S. Dist. LEXIS 25744 (D.N.J. Mar. 30, 2009).....................................53

*Kaufman v. Pfizer Pharms., Inc.*,
    No. 02-22692, 2010 U.S. Dist. LEXIS 146552 (S.D. Fla. Nov. 23, 2010) ...........................23

*Kee v. Zimmer, Inc.*,
    871 F. Supp. 2d 405 (E.D. Pa. 2012) ..................................................................................22

*Kennedy v. Samsung Elecs. Am., Inc.*,
    No. 14-4987, 2015 U.S. Dist. LEXIS 58554 (D.N.J. May 5, 2015).......................................16

*Key v. Lewis Aquatech Pool Supply, Inc.*,
    58 Va. Cir. 344 (Va. Cir. Ct. 2002).....................................................................................35

*Kia Motors Am. Corp. v. Butler*,
    985 So. 2d 1133 (Fla. App. 2008).......................................................................................37

*Kordek v. Becton, Dickinson & Co.*,
    921 F. Supp. 2d 422 (E.D. Pa. 2013) ...................................................................................28

*Kowalsky v. Deutsche Bank Nat'l Trust Co.*,
    No. 14-7856, 2015 U.S. Dist. LEXIS 133284 (D.N.J. Sept. 30, 2015) ...........................53, 55

*Kury v. Abbott Labs., Inc.*,
    No. 11-803, 2012 U.S. Dist. LEXIS 4862 (D.N.J. Jan. 17, 2012)..........................................29

*Lambert v. Downtown Garage, Inc.*,
 553 S.E.2d 714 (Va. 2001) ....................................................................35

*Lattaker v. Rendell*,
 269 F. App'x 230 (3d Cir. 2008) ...........................................................56

*Lee v. Fairfax Cnty. Sch. Bd.*,
 621 F. App'x 761 (4th Cir. 2015) ..........................................................14

*Licul v. Volkswagen Group of Am., Inc.*,
 No. 13-61686, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ..........................14, 16

*Llado-Carreno v. Guidant Corp.*,
 No. 09-20971, 2011 U.S. Dist. LEXIS 17088 (S.D. Fla. Feb. 22, 2011) ...............................32

*Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ................................................................................57

*Maniscalco v. Brother Int'l (USA) Corp.*,
 709 F.3d 202 (3d Cir. 2013) ....................................................................9

*Mantz v. TRS Recovery Servs.*,
 No. 12-81039, 2012 U.S. Dist. LEXIS 193580 (S.D. Fla. Oct. 30, 2012) ...........................37

*Marchante v. Sony Corp. of Am.*,
 801 F. Supp. 2d 1013 (S.D. Cal. 2013) ..........................................14, 16

*Matalski v. IBM Corp.*,
 No. 92-1016, 1992 U.S. App. LEXIS 20730 (4th Cir. Aug. 28, 1992) ................................26

*McCalley v. Samsung Elecs. Am., Inc.*,
 No. 07-2141, 2008 U.S. Dist. LEXIS 28076 (D.N.J. Mar. 31, 2008) ...................................13

*McMahon v. Take-Two Interactive Software, Inc.*,
 No. 13-2032, 2017 U.S. Dist. LEXIS 105485 (C.D. Cal. July 6, 2017) ...............................21

*McKell v. Wash. Mut., Inc.*,
 142 Cal. App. 4th 1457 (Cal. App. 2006) .............................................12

*Minkler v. Apple Inc.*,
 65 F. Supp. 3d 810 (N.D. Cal. 2014) ....................................................17

*Mitchell v. Moore*,
 729 A.2d 1200 (Pa. Super. 1999) .........................................................11

*Mladenov v. Wegmans Food Mkts., Inc.*,
 124 F. Supp. 3d 360 (D.N.J. 2015) ...........................................39, 55-56

*Monck v. Progressive Corp.*,
No. 15-250, 2015 U.S. Dist. LEXIS 47801 (M.D. Pa. Apr. 13, 2015) ................................. 42

*Monclava v. U.S. Bank N.A.*,
No. 15-7383, 2016 U.S. Dist. LEXIS 106127 (D.N.J. Aug. 11, 2016) ................................. 56

*Moulton v. LG Elecs. USA, Inc.*,
No. 11-4073, 2012 U.S. Dist. LEXIS 117931 (D.N.J. Aug. 21, 2012) ........................... 19-20

*Moyer v. United Dominion Indus.*,
473 F.3d 532 (3d Cir. 2007) ................................................................................................ 27

*Murphy v. State Farm Mut. Auto Ins. Co.*,
No. 16-2922, 2016 U.S. Dist. LEXIS 125841 (E.D. Pa. Sept. 15, 2016) .............................. 41

*Myers v. BMW of N. Am., LLC*,
No. 16-412, 2016 U.S. Dist. LEXIS 140768 (N.D. Cal. Oct. 11, 2016) .......................... 44-47

*Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp.*,
No. 11-1054, 2011 U.S. Dist. LEXIS 147901 (M.D. Fla. Nov. 16, 2011) ............................ 55

*Oddo v. Arcoaire Air Conditioning & Heating*,
No. 15-1985, 2017 U.S. Dist. LEXIS 10507 (C.D. Cal. Jan. 24, 2017) ................................ 15

*Oliver v. Funai Corp.*,
No. 14-04532, 2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015) ........................... 40, 51

*Park-Kim v. Daikin Indus.*,
No. 15-9523, 2016 U.S. Dist. LEXIS 158056 (C.D. Cal. Nov. 14, 2016) ............................. 47

*Park-Kim v. Daikin Indus.*,
No. 15-9523, 2016 U.S. Dist. LEXIS 104248 (C.D. Cal. Aug. 3, 2016) .................... 25, 29-30

*Perez v. JPMorgan Chase Bank, N.A.*,
No. 14-2279, 2016 U.S. Dist. LEXIS 24689 (D.N.J. Feb. 29, 2016) ..................................... 48

*Phillips v. Cricket Lighters*,
883 A.2d 439 (Pa. 2005) ...................................................................................................... 19

*Pye v. Fifth Generation, Inc.*,
No. 14-493, 2015 U.S. Dist. LEXIS 128594 (N.D. Fla. Sept. 23, 2015) ............................... 19

*Q+Food LLC v. Mitsubishi Fuso Truck of Am., Inc.*,
No. 14-6046, 2015 U.S. Dist. LEXIS 99824 (D.N.J. July 30, 2015) ..................................... 56

*Rait v. Sears*,
No. 08-2461, 2009 U.S. Dist. LEXIS 70217 (D.N.J. Aug. 10, 2009) ............................... 40-41

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
    No. 14-277, 2015 U.S. Dist. LEXIS 108634 (D.N.J. Aug. 18, 2015) ....................................17

*RCI Contractors & Eng'rs, Inc. v. Joe Rainero Tile Co.*,
    677 F. Supp. 2d 914 (W.D. Va. 2010) ....................................20

*Reid v. Albizem*,
    No. 13-4448, 2014 U.S. Dist. LEXIS 87462 (E.D. Pa. June 25, 2014)................................10

*Richmond, Fredericksburg & Potomac R. Co. v. Davis Indus., Inc.*,
    787 F. Supp. 572 (E.D. Va. 1992) ....................................30

*Robertson v. Ford Motor Co.*,
    40 Va. Cir. 231 (Va. Cir. Ct. 1996)....................................35

*Robinson v. Kia Motors Am., Inc.*,
    No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sept. 11, 2015) ....................................12

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)....................................40

*Rodio v. Smith*,
    587 A.2d 621 (N.J. 1991)....................................39

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. App. 2006)....................................36-37

*Rudy's Glass Constr. Co. v. E. F. Johnson Co.*,
    404 So. 2d 1087 (Fla. App. 1981)....................................17

*Runnels v. Norcold, Inc.*,
    No. 16-713, 2017 U.S. Dist. LEXIS 44698 (E.D. Va. Mar. 24, 2017)....................................31

*Sansom v. Crown Equip. Corp.*,
    880 F. Supp. 2d 648 (W.D. Pa. 2012)....................................27

*Santana Prods. v. Bobrick Washroom Equip., Inc.*,
    401 F.3d 123 (3d Cir. 2005)....................................42

*Sanyal v. Toyota Motor N. Am., Inc.*,
    No. 14-960, 2015 U.S. Dist. LEXIS 5667 (E.D. Va. Jan. 15, 2015) ....................................31

*Schindler v. Sofamor*,
    774 A.2d 765 (Pa. Super. Ct. 2000)....................................27

*Schmidt v. Ford Motor Co.*,
    972 F. Supp. 2d 712 (E.D. Pa. 2013)....................................43

*Schmidt v. Household Fin. Corp., II*,
    661 S.E.2d 834 (Va. 2008) ................................................................................11

*Semeran v. Blackberry Corp.*,
    No. 15-750, 2016 U.S. Dist. LEXIS 11864 (D.N.J. Feb. 2, 2016) ....................48, 52

*Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*,
    374 S.E.2d 55 (Va. 1988) .................................................................................30

*Sherk v. Countrywide Home Loans, Inc.*,
    No. 08-5969, 2009 U.S. Dist. LEXIS 68628 (E.D. Pa. Aug. 6, 2009) ....................43

*Silipena v. Am. Pulverizer Co.*,
    No. 16-711, 2017 U.S. Dist. LEXIS 44212 (D.N.J. Mar. 27, 2017).......................48

*Slippery Rock Area Sch. Dist. v. Tremco, Inc.*,
    No. 15-1020, 2016 U.S. Dist. LEXIS 75403 (W.D. Pa. June 9, 2016)...................41

*Smith v. Berg*,
    No. 99-1233, 2000 U.S. Dist. LEXIS 4513 (E.D. Pa. Apr. 10, 2000) ....................32

*Smith v. LG Elecs. USA, Inc.*
    No. 13-4361, 2014 U.S. Dist. LEXIS 31577 (N.D. Cal. Mar. 11, 2014)................46

*Solo v. Bed Bath & Beyond, Inc.*,
    No. 06-1908, 2007 U.S. Dist. LEXIS 31088 (D.N.J. Apr. 26, 2007) .....................38

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...............................................................21

*Spruce Street Props., Ltd. v. Noblesse*,
    No. 09-1405, 2011 U.S. Dist. LEXIS 105835 (W.D. Pa. Sept. 19, 2011).............24

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
    912 F.2d 643 (3d Cir. 1990)...............................................................................55

*Stevenson v. Mazda Motor of Am., Inc.*,
    No. 14-5250, 2015 U.S. Dist. LEXIS 70945 (D.N.J. June 2, 2015)......................51, 53-55

*Sutherlin v. Lowe's Home Ctrs., LLC*,
    No. 14-368, 2014 U.S. Dist. LEXIS 133846 (E.D. Va. Sept. 23, 2014) ................10

*Swearingen v. Santa Cruz Natural, Inc.*,
    No. 13-4291, 2016 U.S. Dist. LEXIS 109432 (N.D. Cal. Aug. 17, 2016) .............22

*Sykes v. Bayer Pharms. Corp.*,
    548 F. Supp. 2d 208 (E.D. Va. 2008) ..................................................................31

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................................19

*Trazo v. Nestle USA, Inc.*,
  No. 12-2272, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ................................12

*Turf Lawnmower Repair v. Bergen Record Corp.*,
  655 A.2d 417 (N.J. 1995)........................................................................................41

*Vaden v. Discovery Bank*,
  556 U.S. 49 (2009)...................................................................................................56

*Vassallo v. Bank of N.Y.*,
  No. 15-3227, 2016 U.S. Dist. LEXIS 47895 (D.N.J. Apr. 8, 2016).........................................48

*VRG Corp. v. GNK Realty Corp.*,
  641 A.2d 519 (N.J. 1994)........................................................................................11

*Weiss v. Cassidy Dev. Corp.*,
  63 Va. Cir. 76 (Va. Cir. Ct. 2003)..........................................................................34

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002)........................................................................24, 41

*Weske v. Samsung Elecs. Am., Inc.*,
  42 F. Supp. 3d 599 (D.N.J. 2014) ...........................................................................52

*West v. Caterpillar Tractor Co., Inc.*,
  336 So. 2d 80 (Fla. 1976)........................................................................25, 27

*Witt v. Howmedica Osteonics Corp.*,
  No. 13-20742, 2013 U.S. Dist. LEXIS 181203 (S.D. Fla. Dec. 30, 2013) ........................ 25-26

*Wynn's Extended Care, Inc. v. Bradley*,
  619 F. App'x 216 (4th Cir. 2015) ..........................................................................32

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. 2016) ....................................................................43

*Yastrab v. Apple Inc.*,
  No. 14-1974, 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015)..........................44, 47

*Yingst v. Novartis AG*,
  63 F. Supp. 3d 412 (D.N.J. 2014) ...........................................................................11

*Zaza v. Marquess & Nell*,
  675 A.2d 620 (N.J. 1996)........................................................................................26

*Zuniga v. Am. Home Mortg.*,
    No. 14-2973, 2016 U.S. Dist. LEXIS 155256 (D.N.J. Nov. 8, 2016) ..............................32, 48


**FEDERAL STATUTES & RULES**

28 U.S.C. § 2201(a) ...................................................................................................55

Fed. R. Civ. P. 9(b) .................................................................................. 33-34, 48, 52

Fed. R. Civ. P. 12(b)(6)............................................................................................48


**STATE STATUTES**

Cal. Civ. Code. § 1782(a) ..................................................................................... 44-45

Cal. Civ. Code. § 1791.1(c) ......................................................................................22

Fla. Stat. § 680.212 ....................................................................................................23

N.J. Stat. Ann. § 12A:2A-212 ...................................................................................23

13 Pa. Cons. Stat. § 2316(b) ......................................................................................17

13 Pa. Cons. Stat. § 2A212 ........................................................................................23

Va. Code § 8.2A-212 .................................................................................................23


**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF TORTS § 402 ...............................................................27

## I.      **PRELIMINARY STATEMENT**

Plaintiffs seek through this action to recover from Defendant Samsung Electronics America, Inc. ("SEA") for various out-of-warranty service and maintenance costs relating to six Samsung-brand refrigerators (the "Refrigerators").   Recognizing that their assorted service issues fall outside the one-year limited warranty coverage provided by SEA, Plaintiffs cast about for legal theories that will allow them to repackage their defective or untimely warranty claims as viable causes of action. In the end, Plaintiffs cobble together eighteen purported claims, sounding in unjust enrichment, implied warranty, tort and consumer fraud.   But each fails as a matter of law, and must be dismissed.

While the locations and circumstances of Plaintiffs' purchases differed, each of their Refrigerators was sold with a substantially identical express limited manufacturer's warranty. Plaintiffs allege that, despite otherwise meeting their expectations, their Refrigerators each eventually required icemaker maintenance or service for such things as water leakage, fan noise or ice buildup necessitating periodic defrosting.   Notably, however, *none* of the Plaintiffs ever made a timely warranty claim to, much less ever had any such claim denied by SEA.   Indeed, Plaintiffs, with a single exception,[1] do not even attempt to assert breach of express warranty claims in their First Amended Class Action Complaint (ECF 16) ("FAC").   But allegations that their Refrigerators' icemakers needed to be maintained or serviced – after they were out of warranty – do not give rise to a viable cause of action for any of the Plaintiffs.

To begin, Plaintiffs' purported unjust enrichment claims are precluded as a matter of law precisely because their Refrigerators are covered by an express written warranty.   Plaintiffs' implied

---

[1] As demonstrated below, Plaintiffs' lone breach of express warranty claim is baseless since the relevant Plaintiffs never made a timely warranty claim.  *See* Part III.B.1.

1

warranty of merchantability claims are likewise fatally defective because Plaintiffs do not allege that, at the time of sale, their Refrigerators failed to satisfy their ordinary purpose of keeping food cold and making ice.  Moreover, certain Plaintiffs' claims also fail for lack of allegations showing pre-suit notice or privity – or are otherwise precluded by their Refrigerators' express written warranties limiting the implied warranty to a 1-year period.

Plaintiffs' purported tort and consumer fraud claims fare no better.  Their strict products liability claims, which allege no physical injury or damage to property other than the Refrigerators themselves, are foreclosed by the economic loss doctrine.  They are also otherwise barred (or non-existent) under the laws of Plaintiffs' respective states.   Similarly, Plaintiffs' fraudulent concealment and statutory consumer fraud claims fail because, among other reasons, Plaintiffs allege no personal exposure to any misrepresentation by SEA.  Nor do Plaintiffs sufficiently allege the knowledge necessary for fraud.  Instead, Plaintiffs point to alleged consumer complaints posted on the internet, but allege no facts showing that SEA was *ever* aware of those postings – which were purportedly made on third-party websites unaffiliated with SEA – much less that it was aware of them when Plaintiffs bought their Refrigerators.  And courts routinely reject the mere existence of technical service bulletins, which provide guidance to service technicians in addressing various issues, as a basis for alleging fraud.  There simply is no fraud alleged.

Finally, Plaintiffs assert futile claims for injunctive and declaratory relief.  Injunctive relief is not a freestanding cause of action, nor do Plaintiffs plead facts satisfying the requirements for an injunction or show that Plaintiffs face future harm.  Instead, they rely entirely on conclusory, boilerplate assertions about supposed threats to public safety, which are wholly unsupported by any factual allegations in the FAC.  Plaintiffs' so-called "declaratory relief" claim, which, at best, merely duplicates their other unsustainable claims, fails because Plaintiffs neither seek a declaration of any party's legal rights nor (again) show any future harm justifying such relief.

Because none of Plaintiffs' purported claims is viable and because they have already voluntarily amended their Complaint, further amendment would be futile and their FAC should therefore be dismissed in full and with prejudice.

## II.   <u>BACKGROUND</u>

**A.     Plaintiffs' Alleged Pre-Purchase Research.**

Prior to buying their Refrigerators, each Plaintiff allegedly conducted online research, spoke with salespeople at retail stores, or both.   FAC ¶¶24-25, 41, 45, 49, 56, 59.   But none of the Plaintiffs alleges <u>any</u> pre-purchase communication with SEA.   While the FAC includes purported "statements Samsung has made about" the Refrigerators' icemakers, <u>none</u> of the Plaintiffs alleges personal <u>pre-purchase exposure to any such statement</u>.   *Id.* ¶70.   And, in any event, the referenced statements were not made by SEA, but were found on third-party retailer websites.   *Id.*

In a similar way, several Plaintiffs include in their allegations images of advertisements for the Refrigerators.   *Id.* ¶¶41, 45, 49, 56, 59.   But all of those advertisements are retailer advertisements, not Samsung advertisements, and, in any event, Plaintiffs do not claim that they saw *any* of them prior to their purchases.   Only Plaintiffs Ronald and Debra Bianchi (the "Bianchis") allege pre-purchase exposure to a representation that they attribute to SEA: a PDF found on a third-party retailer's website regarding the RF23HC (the "RF23HC PDF").   *Id.* ¶24.[2] Yet, Plaintiffs do not assert that anything in that PDF is in any way false or misleading.   *See id.*

**B.     The Refrigerators' Limited Warranties.**

Each of the Plaintiffs' Refrigerators was sold with a one-year Limited Warranty ("Limited

---

[2] The RF23HC PDF is found at http://pdf.lowes.com/dimensionsguides/887276966106_meas.pdf.

Warranty"). *See* Decl. of Philip M. Oliss ("Oliss Decl."), Exs. A – F.[3]   The Limited Warranty provides, "begin[ning] on the original date of purchase," coverage of "**One (1) year Parts and Labor**," in which "repair or replace[ment] [of] any part found to be defective" is provided at no charge.  Oliss Decl., Ex. A at 45 (bold in original).[4]

The Limited Warranty also clearly and conspicuously disclaims other express warranties and limits the duration of the implied warranty of merchantability.  It provides that "THERE ARE NO OTHER EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE."  *Id.* (all-caps in original).  It further provides that "NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY … SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE."  *Id.* (all-caps in original).

**C.   Plaintiffs' Allegations Regarding Their Refrigerators.**

**1.   The Bianchis (Virginia).**

The Bianchis reside in Virginia and allegedly bought a Samsung RF23HCEDBWW/AA ("RF23HC") Refrigerator on September 29, 2014 from a Home Depot store in Virginia.  FAC ¶22.  Their Refrigerator performed without incident for the first 15 months.  *Id.* ¶¶22, 29.  In January 2016, however, "after the refrigerator/ice-maker's one-year warranty expired," their icemaker "began experiencing water buildup in the exit chute within the door of the refrigerator where the ice maker is located."  *Id.* ¶29.  At some later point, the Refrigerator's "ice maker fan began to emit

---

[3] The Oliss Declaration has been filed contemporaneously.  The Court may consider the Limited Warranty because it is central to and dispositive of Plaintiffs' express and implied warranty claims.  *Fishman v. GE Co.*, No. 12-585, 2014 U.S. Dist. LEXIS 56144, at *15 n.5 (D.N.J. Apr. 23, 2014).

[4] The Limited Warranty provides additional coverage for certain specific refrigerator components, none of which is implicated by the FAC's allegations.  *See* Oliss Decl., Ex. A at 45.  For convenience, this Motion cites to the Limited Warranty of the Bianchis' RF23HC, which is substantially identical to the Limited Warranties included with the other Plaintiffs' Refrigerators.

loud, jarring noises." *Id.*   The Bianchis made no warranty claim to SEA regarding those alleged problems.  Instead, they state they had their Refrigerator serviced in February 2016. *Id.* ¶30.  They claim, however, that, two months later, on April 8, 2016, they "contacted Samsung via e-mail and informed them of the ice-maker failure, water collection in the refrigerator, and request[ed] a refund." *Id.* ¶31.  They allege that Samsung acknowledged their email, but did not respond to their refund request. *Id.*

At some unspecified point after their Refrigerator was serviced in February 2016, its "ice maker continued to ice over and not function."   *Id.* ¶32.   They then attempted to personally experiment with and modify their Refrigerator.  *Id.* ¶¶33-34 (alleging modifications based upon recommendations by "Geek Squad" and "theinvisibleblog," a third-party website).  In December 2016 they chose to "turn[] off" their Refrigerator's icemaker, but turned it back on in April 2017. *Id.* ¶¶38-39.  Although they claim that their icemaker requires periodic defrosting, their Refrigerator continues to operate. *See id.*

### 2.      The Marino Plaintiffs (Florida).

Madeline Marino and Richard Bishop (the "Marino Plaintiffs") reside in Florida and allegedly bought a Samsung RF30HBEDBSR/AA ("RF30") Refrigerator on May 19, 2015 from a Home Depot store in Florida.  FAC ¶40.  In January 2017 – well after their Limited Warranty's 1-year coverage period had expired – their "ice maker began producing and leaking water rather than producing ice.  In addition, there was ice buildup in the ice maker and slushy ice." *Id.* ¶42.  Ms. Marino "contacted Samsung, but because the refrigerator was out of warranty, she was told by Samsung that any service would be at her expense." *Id.*  The Marino Plaintiffs claim that they hired a technician, who serviced their Refrigerator on January 28, 2017, but that the problems recurred within a week.  *Id.* ¶¶42-43.  At an unspecified point, they "contacted Samsung requesting reimbursement for the repairs and for replacement costs of the refrigerator," but allege that their

request was declined.  *Id.*

### 3.   The Castelos (California).

Francisco and Marie Castelo (the "Castelos") reside in California and allegedly bought a Samsung RF28HFEDBSR/AA ("RF28") Refrigerator on April 22, 2015 from a Pacific Sales Kitchen & Home retailer in California.  FAC ¶44.  In August 2016, "after the one-year warranty period expired," their "ice maker began icing over and producing ice until the ice maker would freeze up."  *Id.* ¶46.  But they did not actually contact SEA until January 2017, and they do not plead that they made a belated warranty claim at that time.  *Id.* ¶47.  Instead, they claim that SEA scheduled three service visits, and that they paid for two of those visits, including replacement of their Refrigerator's icemaker on January 19, 2017.  *Id.*  The Castelos allege no further problems with their Refrigerator.

### 4.   The Mahoneys (New Jersey).

John and Laura Mahoney (the "Mahoneys") reside in New Jersey and allegedly bought a Samsung RF23HSESBSR/AA ("RF23HS") Refrigerator on December 27, 2015 from a Best Buy store in New Jersey.  FAC ¶48.  In November 2016 their "ice maker began to freeze up, ice over, and fail to work."  *Id.* ¶50.  They do not plead that they made a warranty claim to SEA at that point.  Instead, "[d]uring the first week of January, 2017, after the refrigerator warranty had expired, [their] ice maker once against froze up and failed to work."  *Id.* ¶51.  The Mahoneys then contacted SEA and were instructed how to defrost and reset the icemaker.  *Id.*  They claim that, "immediately" thereafter, their icemaker problems reoccurred.  *Id.* ¶52.  The Mahoneys state that they contacted Samsung again and that, on May 19, 2017 a technician replaced their icemaker.  *Id.*

The Mahoneys allege that "their warranty period was deemed by Samsung to have ended on December 31, 2016."  *Id.* ¶53.  They assert no further problems with their Refrigerator after its icemaker was replaced.

### 5.     The Cecconis (Pennsylvania).

Ron and Patricia Cecconi (the "Cecconis"), who reside in Pennsylvania, allegedly bought a Samsung RF263BEAESR ("RF263") Refrigerator on August 6, 2012 from an hhgregg store in Delaware.  FAC ¶55.  In April 2017 – more than four and a half years after their purchase – their Refrigerator's "ice house began making loud noises because it was hitting chunks of ice that had formed inside."  *Id.* ¶57.  The Cecconis "called Samsung, which sent a technician," who "defrosted … and replaced sensors in the refrigerator."  *Id.*  The "over-icing recurred" in May 2017.  *Id.*  They again "contacted Samsung and on May 19, 2017, a Samsung technician … defrosted the refrigerator … and replaced one of the sensors."  *Id.*  The Cecconis do not claim they were charged for the May 19 visit.  On May 31, 2017, a technician visited to replace a "control board" on the Refrigerator, but "found no error codes and did not install the control board."  *Id.*  The Cecconis do not allege that they were charged for the May 31 visit, or that they experienced any further problems after their Refrigerator was serviced.

### 6.     The Kauffman Plaintiffs (Pennsylvania).

Eda Kauffman and James Rosengarten (the "Kauffman Plaintiffs") also reside in Pennsylvania.  FAC ¶58.  They allegedly bought a Samsung RF23HTEDBSR/AA ("RF23HT") Refrigerator on August 29, 2014 from a Best Buy store in Pennsylvania.  *Id.*  At some unidentified point in 2015 – purportedly "while [their Refrigerator] was still under the manufacturer's one-year limited warranty" – its "ice maker iced over, stopped working, and the water dispenser line froze up."  *Id.* ¶60.  The Kauffman Plaintiffs had their Refrigerator serviced and "[t]he repairs and/or parts used at that time were covered by the Samsung warranty."  *Id.*  They allege no further problems until April 2017 – well after the Limited Warranty had expired – when the "Ice Maker again iced up and was unusable."  *Id.* ¶61.  The Kauffman Plaintiffs state that they scheduled a technician to replace their Refrigerator's auger and icemaker on July 21, 2017.  *Id.*

7

D.    **Plaintiffs' Allegations Regarding TSB 2014 and TSB 2015.**

While Plaintiffs allege a variety of maintenance and service issues they relate to their Refrigerators' icemakers, they identify no common defect affecting the Refrigerators.  Instead, they claim that their Refrigerators' purported "Defects are identified in a technical service bulletin issued by Samsung on July 17, 2015 ('TSB 2015') and in a technical service bulletin issued earlier by Samsung on August 18, 2014 ('TSB 2014')."[5]  FAC ¶2; *see id.* ¶¶3-6, 66, 89.  Plaintiffs base their claims largely on these TSBs, complaining that they "were never notified of the [TSBs] by Samsung" prior to their purchases.  *Id.* ¶¶28 (Bianchis), 40 (Marino Plaintiffs), 45-47 (Castelos), 48 (Mahoneys), 55 (Cecconis), 58 (Kauffman Plaintiffs), 89 (unjust enrichment), 107 (injunctive and declaratory relief), 141 (Virginia Consumer Protection Act), 181 (California Consumer Legal Remedies Act), 274 (Pennsylvania implied warranty of merchantability).  But the TSBs merely provide guidance to service technicians in addressing a variety of issues, and, more importantly, do not identify any specific defects in the Refrigerators' icemakers.  As such, the TSBs are irrelevant to Plaintiffs' claims.

TSB 2014 assists technicians in correcting instances where there is a "gap between the wall and the ice room floor."  Oliss Decl., Ex. G at 1.  But TSB 2014 identifies no defect; and, in any event, expressly provides that "[a]ll new production units now undergo an improved inspection to identify and correct the gap," and also that "[t]he new process has been in effect since March 2014." *Id.*  Only the Cecconis claim to have bought their Refrigerator prior to March 2014.  *See* Part II.C.5.  Thus, by its own terms, TSB 2014 has no applicability to any of the other Plaintiffs, whose purchases occurred well after March 2014.  *See id.*  As for the Cecconis, they do not allege that their Refrigerator had the "gap" issue addressed in TSB 2014, or that their frustrations with their

---

[5] For the Court's convenience, copies of TSB 2014 and TSB 2015 are annexed as Exhibit G and Exhibit H, respectively, in the Oliss Declaration.

Refrigerator had any relation to TSB 2014.  *See* FAC ¶¶55-57.

TSB 2015 likewise provides guidance to technicians but does not identify any alleged design defect.  *See generally id.*  In addition, TSB 2015 explains that a "factory solution" to the service issues listed therein "[b]eg[an] with July 2015 production."  Oliss Decl., Ex. H at 4.  Thus, even if TSB 2015 had any relevance (it does not), it would not apply to the Mahoneys' Refrigerator, since they bought their Refrigerator after the factory solution was implemented.  *See* Part II.C.4.

### III.  <u>ARGUMENT</u>

Lacking viable express warranty claims, Plaintiffs purport to bring 18 different claims under the laws of five different states.  Each of those claims fails under the law of the Plaintiffs' home states.[6]  And the FAC should be dismissed in full and with prejudice.

Because the FAC is bloated with 275 paragraphs ranging over 90 pages and purporting to set forth 18 counts under the laws of five jurisdictions, SEA has prepared and attached as Exhibit 2 a chart identifying in summary fashion the fatal deficiencies in the FAC as they relate to each named Plaintiff.[7]  For the Court's convenience, each page of Exhibit 2 addresses a single putative claim, listing the Plaintiffs in alphabetical order and then cross-referencing each of them against the applicable dispositive issues.  Included with those dispositive issues are citations to the applicable

---

[6] Where there is a conflict between New Jersey law and the law of Plaintiffs' home states, the law of the jurisdiction with the most significant relationship to the claims governs.  *See Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (New Jersey follows 'most significant relationship' test).  As shown in Exhibit 1, which has been filed contemporaneously with this Motion, actual conflicts exist between New Jersey law and the laws of Plaintiffs' respective home states for three purported common-law claims: unjust enrichment (Count I), implied warranty of merchantability (Count II) and design-defect strict liability (Count IV).  As to those three common-law claims, the Plaintiffs' home states have the most significant relationship because that is where they allegedly bought and used their Refrigerators.  The balance of Plaintiffs' claims are expressly predicated on the statutes of their home states, and are limited to Plaintiffs from those states.  FAC ¶¶125-208, 254-75 (Counts VI – XIII, XVII – XVIII).  For each of those claims, the specified statutes and interpretive law of the Plaintiffs' home states applies.

[7] Exhibit 2 has been filed contemporaneously with this Motion.

sections of this brief for the Court's reference.

A.   **Plaintiffs Fail to State a Claim for Unjust Enrichment Because of the Limited Warranty, Plaintiffs' Continued Use of Their Refrigerators, and for Other Independent Reasons (Count I) (*All Plaintiffs*).**

Plaintiffs' dissatisfaction with their Refrigerators' performance after the Limited Warranties expired does not give rise to a claim for unjust enrichment in any state. In fact, Plaintiffs' unjust enrichment claim fails for several independent reasons, each requiring dismissal.

First, California, Florida, New Jersey, Pennsylvania and Virginia law is clear that where a specific contract governs a relationship, any claim that a plaintiff purports to have must be based on that contract, not on unjust enrichment. *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000) (New Jersey).[8] In each of those states, an express warranty is a contract. *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *7 (D.N.J. Sept. 30, 2008) (New Jersey).[9] Plaintiffs concede that their relationship with SEA is subject to the Limited Warranty, which bars their unjust enrichment claim. FAC ¶¶28, 42, 46, 50, 60.

Second, Plaintiffs' unjust enrichment claims fail since they each admit that they continue to use their Refrigerators. *Id.* ¶¶35, 39, 43, 47, 52, 57. Plaintiffs thus concede that they have "derived a substantial benefit" from their Refrigerators, and their unjust enrichment claims fail as a matter of law. *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (dismissing claim under Florida law when plaintiffs stayed on cruise and "derived a substantial

---

[8] *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (Pennsylvania); *Jones v. Bank of Am. Corp.*, No. 09-162, 2010 U.S. Dist. LEXIS 142918, at *23 (E.D. Va. Aug. 24, 2010) (Virginia); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. App. 2010); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. App. 2008).

[9] *Sutherlin v. Lowe's Home Ctrs., LLC*, No. 14-368, 2014 U.S. Dist. LEXIS 133846, at *6 (E.D. Va. Sept. 23, 2014) (Virginia); *Reid v. Albizem*, No. 13-4448, 2014 U.S. Dist. LEXIS 87462, at *12-13 (E.D. Pa. June 25, 2014) (Pennsylvania); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 831 (Cal. App. 2006); *Brennan v. Dow Chem. Co.*, 613 So. 2d 131, 132 (Fla. App. 1993).

benefit" from their tickets).[10]

Third, an unjust enrichment claim must be dismissed under New Jersey and Virginia law where, as here, a plaintiff does not plead facts "show[ing] that [he] expected remuneration from defendant at the time [he] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 417 (D.N.J. 2014) (dismissing unjust enrichment for lack of cognizable claim) (citing *VRG Corp. v. GNK Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)) (internal punctuation omitted). As the court in *In re Chinese Drywall Cases* explained, "[t]he bare allegation that a defendant should be expected to repay whatever profits it realized from a sale to an unhappy customer does not state a claim for unjust enrichment." 80 Va. Cir. 69, 84 (Va. Cir. Ct. 2010). For instance, in *Schmidt v. Household Finance Corp., II*, the court dismissed the plaintiff's unjust enrichment because he did not plead that defendant "should reasonably have expected to repay [plaintiff]." 661 S.E.2d 834, 838 (Va. 2008). Nor does Plaintiffs' boilerplate demand that SEA disgorge all "profits, benefits, and compensation" from sale of the Refrigerators lead to a different result. FAC ¶93. Courts find "fatal to [unjust enrichment] claim[s]" Plaintiffs' "failure to plead anything about Defendants' reasonable expectation to pay Plaintiffs for some benefit that they received." *Chinese Drywall*, 80 Va. Cir. at 84; *cf. Yingst,* 63 F. Supp. 3d at 417-18. For this reason, too, the unjust enrichment claims of the Bianchis (Virginia) and Mahoneys (New Jersey) fail.

Fourth, the Mahoneys do not assert that they directly conferred a benefit upon SEA, which is a necessary element on unjust enrichment under New Jersey law. *Hughes v. Panasonic Cons. Elecs. Co.*, No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *78 (D.N.J. July 21, 2011) (dismissing

---

[10] *Hughes v. Panasonic Cons. Elecs. Co.*, No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *76 (D.N.J. July 21, 2011) (New Jersey); *Durell*, 183 Cal. App. 4th at 1370; *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

unjust enrichment claim for lack of "direct relationship between the parties").  The Mahoneys contend that they bought their Refrigerator from Best Buy, not from SEA.  FAC ¶48.  Their conclusory allegation that "Samsung obtained monies that rightfully belong to Plaintiffs" thus does not plead the required direct nexus between them and SEA.  *Id.* ¶90; *see Hughes*, 2011 U.S. Dist. LEXIS 79504, at *78.

And <u>fifth</u>, in California, unjust enrichment is a theory of recovery, not an independent cause of action.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (Cal. App. 2006).  Thus, where, as here, an unjust enrichment claim "rests on the same allegations already covered by [plaintiffs'] other claims, which also provide for restitution as a remedy, the claim is 'merely duplicative of statutory or tort claims' and must be dismissed."  *Trazo v. Nestle USA, Inc.*, No. 12-2272, 2013 U.S. Dist. LEXIS 113534, at *37 (N.D. Cal. Aug. 9, 2013) (dismissing unjust enrichment claim).  Because the Castelos' unjust enrichment claim is not a claim under California law, it must be dismissed for this reason as well.

**B.    The Mahoneys' Express Warranty Claim Must Be Dismissed (Count XV).**

**1.    SEA Never Denied Any Timely Warranty Claim By the Mahoneys.**

Dismissal of the FAC's sole breach of express warranty claim is required because the Mahoneys never made – and SEA never denied – any timely claim under the Limited Warranty.  In New Jersey, "an express warranty does not cover repairs made after the applicable time has elapsed.  This general rule applies regardless of whether the defect existed prior to expiration of the warranty."  *Robinson v. Kia Motors Am., Inc.*, No. 13-006, 2015 U.S. Dist. LEXIS 121755, at *27 (D.N.J. Sept. 11, 2015) (dismissing breach of express warranty claim).

The Mahoneys concede that the Limited Warranty governs any express warranty claim that they might have, and that it "cover[s] a period of one year from date of purchase."  FAC ¶225; *accord* Oliss Decl., Ex. A at 45.  They allege that they bought their Refrigerator on December 27,

2015, and that, "[i]n November, 2016," their Refrigerator's icemaker "began to freeze up, ice over, and fail to work."  FAC ¶¶48, 50.  But they do <u>not</u> allege that they ever contacted SEA about this problem, much less made a claim under the Limited Warranty.  The Mahoneys further allege that "[d]uring the first week of January, 2017, *after* the refrigerator warranty had expired, the icemaker once again froze up and failed to work."  *Id.* ¶51 (emphasis added).  They allege they then "contacted Samsung" and received instructions for defrosting the icemaker, but do not allege that they made a warranty claim at any time.  *Id.*  When issues with the icemaker allegedly recurred, the Mahoneys say they again contacted Samsung, which scheduled service visits resulting in replacement of the icemaker on May 19, 2017.  *Id.* ¶52.  The Mahoneys still do not allege that, even at that point, they attempted to make a belated warranty claim to SEA.  *See id.*  Instead, they joined the amended complaint filed in this lawsuit.

Such facts require dismissal.  It is long settled that "an express warranty does not cover repairs made after the applicable time … has elapsed."  *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (affirming dismissal of breach of express warranty claim); *McCalley v. Samsung Elecs. Am. Inc.*, No. 07-2141, 2008 U.S. Dist. LEXIS 28076, at *19 (D.N.J. Mar. 31, 2008) ("The case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period.").  The Mahoneys concede they never contacted SEA until "after the refrigerator warranty had expired."  FAC ¶51.  And they do not allege *ever* making a Limited Warranty claim, timely or otherwise.  These failures are dispositive of their claim for breach of express warranty.

### 2.    The Mahoneys' Claim Also Fails for Lack of Pre-suit Notice.

Although "pre-litigation notice" is a "condition precedent" for an express warranty claim in New Jersey, the Mahoneys allege no such notice.  *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *30 (D.N.J. Mar. 26, 2012) ("[B]ecause Plaintiff has failed to

allege that the condition precedent has been met – sending a pre-litigation notice – Plaintiff's express and implied warranty claims necessarily fail."). While they allege that they "contacted Samsung" in or around January 2017 to make inquiries regarding problems allegedly occurring with their Refrigerator's icemaker, the Mahoneys nowhere allege they made a related warranty claim, much less told SEA it was in breach of the Limited Warranty. FAC ¶¶51-52; Part III.B.1. The Mahoneys' failure to provide SEA with pre-suit notice is fatal to their express warranty claim.

### 3. Any Claim Under New Jersey Statute § 12A:2A:210 Fails Because the Mahoneys Do Not Allege that They Leased Their Refrigerator.

As explained below, to the extent the Mahoneys' express warranty claim is based on UCC provisions for <u>leased</u> goods, it necessarily fails and must be dismissed. The Mahoneys allege they <u>purchased</u> their Refrigerator. *See* Part III.C.6.

### 4. The Limited Warranty Is Not Unconscionable and Must Be Enforced.

Because the Mahoneys' claim plainly fails under New Jersey law and the express terms of the Limited Warranty, they assert the Limited Warranty is unconscionable. FAC ¶¶231-33. But the Limited Warranty is not unconscionable as a matter of law.

"Unconscionability may be either substantive or procedural." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) ("[U]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.").[11] "New Jersey courts may find a contract term substantively unconscionable if it is excessively disproportionate and involves an exchange of

---

[11] *Lee v. Fairfax Cnty. Sch. Bd.*, 621 F. App'x 761, 763 (4th Cir. 2015) (Virginia); *Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 819 (E.D. Pa. 2016) (Pennsylvania); *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1022-23 (S.D. Cal. 2013) (California); *Licul v. Volkswagen Group of Am., Inc.*, No. 13-61686, 2013 U.S. Dist. LEXIS 171627, at *7 (S.D. Fla. Dec. 5, 2013) (Florida).

obligations so one-sided as to shock the court's conscience." *Argabright*, 201 F. Supp. 3d at 595 (internal punctuation omitted).[12] "Procedural unconscionability refers to unfairness in the formation of the contract, and may be shown by a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.*[13]

The Mahoneys allege no facts showing that the Limited Warranty is procedurally unconscionable. For one, the mere fact that a warranty is a "preprinted" standardized form does not render it unconscionable. *Id.* at 596. Nor does the Mahoneys' conclusory assertion that they "ha[ve] no meaningful choice in determining these [warranty] time limitations," or that "[a] gross disparity in bargaining power exists between Samsung and [the Mahoneys]." FAC ¶231; *see Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754, at *27 (D.N.J. Mar. 15, 2011) (dismissing with prejudice express warranty claim and rejecting unconscionability argument because plaintiffs "bare-bones allegations that he 'had no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed between' him and BMW, are 'no more than conclusions [that] are not entitled to the assumption of truth'"); *see Oddo*, 2017 U.S. Dist. LEXIS 10507, at *27 (California) (same). Also unavailing is the Mahoneys' conclusory assertion that SEA knew its product "would fail[] generally within or just following the warranty period." FAC ¶233. This Court has expressly rejected that argument: "[Plaintiff's] allegations that BMW knew that the sound insulation in his vehicle would fail after the expiration of the warranty agreement do not indicate that the time and mileage limitation clause was

---

[12] *Oddo v. Arcoaire Air Conditioning & Heating*, No. 15-1985, 2017 U.S. Dist. LEXIS 10507, at *27 (C.D. Cal. Jan. 24, 2017) (California and Florida); *Axalta Coating*, 217 F. Supp. 3d at 819; *Burtt v. Ford Motor Co.*, No. 07-38, 2008 U.S. Dist. LEXIS 9657, at *13 (W.D. Va. Feb. 11, 2008) (Virginia).

[13] *Oddo*, 2017 U.S. Dist. LEXIS 10507, at *30-32; *Burtt*, 2008 U.S. Dist. LEXIS 9657, at *13.

unconscionable." *Alban*, 2011 U.S. Dist. LEXIS 26754, at *27; *Licul*, 2013 U.S. Dist. LEXIS 171627, at *9 (Florida) (same). Finally, "the procedural aspects of unconscionability are nil because the Plaintiffs had a choice among many [refrigerators]" – an irrefutable, commonsense fact that the FAC expressly concedes. *Kennedy v. Samsung Elecs. Am., Inc.*, No. 14-4987, 2015 U.S. Dist. LEXIS 58554, at *16 (D.N.J. May 5, 2015); *Marchante*, 801 F. Supp. 2d at 1022 (California) (same); *see, e.g.*, FAC ¶¶24, 26, 49.

The Mahoneys likewise allege no facts showing that the terms of the Limited Warranty "shock the conscience" and are, thus, substantively unconscionable. *Argabright*, 201 F. Supp. 3d at 597. This Court rejects rote claims that time limitations are "unconscionably brief." *Alban*, 2011 U.S. Dist. LEXIS 26754, at *28; *see* FAC ¶231. It also rejects assertions that time limitations are substantively unconscionable when a "defendant knew of the defect at the time they issued the warranty." *Argabright*, 201 F. Supp. 3d at 597; *Licul*, 2013 U.S. Dist. LEXIS 171627, at *9 (Florida) (same); *see* FAC ¶233. Finally, specifically citing 1-year warranties on refrigerators, this Court has ruled that because "[o]ne-year warranties on home appliances are common," "[t]he length of [such] warranty is also not substantively unconscionable." *Kennedy*, 2015 U.S. Dist. LEXIS 58554, at *16; *see Marchante*, 801 F. Supp. 2d at 1023 (California) (same).

The Limited Warranty is thus neither procedurally nor substantively unconscionable, and its terms must therefore be enforced, dooming the Mahoneys' express warranty claim.

## C.   Plaintiffs' Implied Warranty Claims Must Be Dismissed (Counts II, VIII, X, XIII, XVI and XVII) (*All Plaintiffs*).

Nor does their Refrigerators' alleged need for post-warranty service give rise to a claim for breach of the implied warranty of merchantability. Plaintiffs' breach of the implied warranty claims fail because: (1) the implied warranty was time-limited by the Limited Warranty, (2) Plaintiffs' Refrigerators are fit for their ordinary purpose, (3) certain Plaintiffs failed to allege the requisite pre-suit notice and/or privity, and (4) Plaintiffs cannot base their claims on UCC provisions

16

governing leased goods.

    **1.**      **Because the Implied Warranty of Merchantability Is Limited to One Year by the Limited Warranty, the Claims of the Bianchis, Castelos, Cecconis and Marino Plaintiffs Fail.**

The Bianchis, Castelos, Cecconis and Marino Plaintiffs' implied warranty claims are barred because their Refrigerators' Limited Warranty time-limited the implied warranty period to one year. That 1-year period expired before those Plaintiffs allegedly experienced any difficulties with their Refrigerators.

To effectively disclaim or limit the implied warranty of merchantability under the law of the Plaintiffs' home states, the provision "must mention merchantability and in case of a writing must be conspicuous."  13 Pa. Cons. Stat. § 2316(b).[14]  Disclaimers or limitations to the implied warranty are deemed to be "clear, conspicuous and unambiguous" where, among other things, they are written in all-capitalized font.  *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, No. 14-277, 2015 U.S. Dist. LEXIS 108634, at *22-23 (D.N.J. Aug. 18, 2015); *see Minkler v. Apple Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) ("[C]apitalized formatting … is … conspicuous."); *Rudy's Glass Constr. Co. v. E. F. Johnson Co.*, 404 So. 2d 1087, 1088-90 (Fla. App. 1981) ("language in the body of a form is conspicuous if it is in larger or contrasting type or color," such as all-caps); *Axalta Coating*, 217 F. Supp. 3d at 819 (disclaimer "in boldface type" is "conspicuous"); *Beausoleil v. Peterbilt Motors Co.*, No. 10-222, 2010 U.S. Dist. LEXIS 58445, at *11 (E.D. Va. June 11, 2010) (Virginia) (disclaimer "written in larger or other contrasting type or color" is conspicuous).

The time limitation in the Limited Warranty clearly qualifies under this standard.  The Limited Warranty expressly uses the term "MERCHANTABILITY," and its time limitation on the

---

[14] *Minkler v. Apple Inc.*, 65 F. Supp. 3d 810, 818-19 (N.D. Cal. 2014) (California); *Family Boating & Marine Ctrs. of Fla., Inc., v. Bell*, 779 So. 2d 402, 403 (Fla. App. 2000); *Brosville Cmty. Fire Dep't, Inc. v. Navistar, Inc.*, No. 14-09, 2014 U.S. Dist. LEXIS 173422, at *9-10 (W.D. Va. Dec. 16, 2014) (Virginia).

implied warranty is brought to the attention of consumers in several ways.  Oliss Decl., Ex. A at 45 (all-caps in original).  First, the limitation is found exactly where a consumer would expect: in the warranty section of the Refrigerators' User Manuals.  *Id.* at 1, 45.  That warranty section, moreover, is called out to consumers by the words "Warranty (USA)", which are written in font many times larger than the text on that page.  *Id.* at 45.  In addition, beneath that prominent heading follows a subtitle written in bold-face, all-capitalized font stating "**WARRANTY ON SAMSUNG REFRIGERATOR**."  *Id.* (all-caps and bold in original).  The text of the Limited Warranty is written in plain language and is concise, encompassing only one page.  *Id.*  And within that text the time limitation is called out by all-capitalized font: "NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY …, SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE."  *Id.* (all-caps in original).

Thus, the Limited Warranty clearly and conspicuously limited the implied warranty of merchantability to the applicable express warranty period of the Limited Warranty.  And as Plaintiffs concede, the express warranty that applies to their claims is for "**One (1) year Parts and Labor on Refrigerator**."  *Id.* (bold in original); *see* FAC ¶¶29, 46, 51, 60.  Plaintiffs also concede or otherwise plead facts showing that the 1-year express warranty period expired before they ever experienced any alleged problems with their Refrigerators.  FAC ¶¶29 (Bianchis), 40-42 (Marino Plaintiffs), 46 (Castelos), 55-57 (Cecconis).  Such admissions dispose of their claims.

Plaintiffs cannot escape this fate by conclusorily alleging that the Limited Warranty is "unconscionable."  *Id.* ¶98.  For the reasons already explained, the Limited Warranty is not unconscionable, and its time limitation on the implied warranty must therefore be enforced.  *See* Part III.B.4.  Accordingly, because the implied warranty period has been expressly and conspicuously limited by the Limited Warranty to one year from the time of purchase and because

the Bianchis, Castelos, Cecconis and Marino Plaintiffs allege no problems with their Refrigerators until more than a year after their purchase, their implied warranty claims must be dismissed.

### 2. Plaintiffs' Implied Warranty Claims Must Be Dismissed Because Their Refrigerators Kept Food Cold and Made Ice at the Time They Were Delivered.

Plaintiffs' implied warranty claims also fail because their Refrigerators as delivered easily satisfied their ordinary purpose of keeping food cold and making ice. "Merchantability requires that a product conform to its ordinary and intended use. The warranty does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) (New Jersey) (internal punctuation omitted); *see Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999) (same). "In other words, the warranty requires that the article sold should be of the general kind described and reasonably fit for the general purpose for which it should have been sold." *Green*, 279 F.R.D. at 283 (internal punctuation omitted); *see Bayliner*, 509 S.E.2d at 503 (same). "[T]he implied warranty comes nowhere close to guaranteeing perfection."[15] *Greene v BMW of N. Am., LLC*, No. 11-4220, 2012 U.S. Dist. LEXIS 168695, at *10 (D.N.J. Nov. 28, 2012). Indeed, "[t]he mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (California). Importantly, "[a] cause of action for breach of implied warranty accrues <u>when delivery of the product is made</u>, regardless of the purchaser's lack of knowledge" of any such purported breach, and, here, the FAC makes plain that Plaintiffs' Refrigerators more than satisfied their ordinary purpose "at the time of purchase." *Moulton v. LG Elecs. USA, Inc.*, No. 11-

---

[15] *Phillips v. Cricket Lighters,* 883 A.2d 439, 444 (Pa. 2005); *Greene v. Boddie-Noell Enters., Inc.*, 966 F. Supp. 416, 419 (W.D. Va. 1997) (Virginia); *Pye v. Fifth Generation, Inc.*, No. 14-493, 2015 U.S. Dist. LEXIS 128594, at *12 (N.D. Fla. Sept. 23, 2015) (Florida).

4073, 2012 U.S. Dist. LEXIS 117931, at *6 (D.N.J. Aug. 21, 2012) (underlining added); *Green*, 279 F.R.D. at 283; *RCI Contractors & Eng'rs, Inc. v. Joe Rainero Tile Co.*, 677 F. Supp. 2d 914, 917 (W.D. Va. 2010) (Virginia) (same).

This Court's decision in *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011) is instructive.  Plaintiff there sued for breach of the implied warranty, alleging that defendants' coffeemaker "failed to brew correct amounts of [] coffee." *Id.* at 283.  This Court rejected that claim, noting that, "[a]lthough Defendants may have advertised that the machines would brew a specific amount of beverage, that alone does not transform the 'general' purpose." *Id.*  Granting dismissal, the Court found that plaintiff "has not alleged that his machine would not brew coffee or that it was inoperable," thus ruling that he "has not sufficiently alleged that his brewer was unfit for its ordinary purpose of brewing beverages at the time of purchase." *Id.*

The same proves true here, as well.  There is no allegation that Plaintiffs' Refrigerators failed to keep food cold at the time they were delivered.  Indeed, the FAC's clear implication is the exact opposite.  *See* FAC ¶¶22-61.  There are also no allegations that Plaintiffs' Refrigerators did not make ice at the time of delivery.  *Moulton*, 2012 U.S. Dist. LEXIS 117931, at *6 (implied warranty claim evaluated "when delivery of the product is made").  Instead, Plaintiffs allege that their Refrigerators' icemakers first experienced problems at various points after delivery, ranging from 11 months (Mahoneys) to *more than four and a half years* (Cecconis).  FAC ¶¶30, 32, 42.  In short, Plaintiffs do not sufficiently allege that their Refrigerators failed to conform to their ordinary purpose.  Thus, even accepting their allegations at face value, they do not state a claim for breach of the implied warranty of merchantability.

### 3. The Castelos' Implied Warranty Claim Under the Song-Beverly Consumer Warranty Act Must Also Be Dismissed.

The Castelos' implied warranty claim under the Song-Beverly Consumer Warranty Act ("SBCWA") also fails because their Refrigerator was clearly fit for its ordinary purpose.  The

SBCWA "supplements, rather than supersedes, the provisions of the California Uniform Commercial Code by broadening a consumer's remedies to include costs, attorney's fees, and civil penalties." *Am. Suzuki Motor Corp. v. Super. Court*, 37 Cal. App. 4th 1291, 1295 n.2 (Cal. App. 1995) (internal punctuation omitted); *see McMahon v. Take-Two Interactive Software, Inc.*, No. 13-2032, 2017 U.S. Dist. LEXIS 105485, at *16 (C.D. Cal. July 6, 2017) ("Plaintiffs' claim for the breach of the warranty of merchantability and their claim for violation of the Song Beverly Act … are both claims for the breach of an implied warranty."). Thus, an SBCWA claim "must also show that 'the product lacks even the most basic degree of fitness for ordinary use.'" *McMahon*, 2017 U.S. Dist. LEXIS 105485, at *16 (quoting *Birdsong v. Apple Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)).

As explained above, the Castelos have alleged no such facts. *See* Part III.C.2. They do not allege that their Refrigerators as delivered failed to keep food cold. FAC ¶¶44-47. Nor do they allege that their Refrigerator did not make ice at the time they bought it. *Id.* In fact, the Castelos only allege that, roughly 16 months after their purchase, their icemaker began experiencing problems. *Id.* ¶46. Even then, they do not allege that they could not use the icemaker; instead, they only allege that they had to perform periodic upkeep and monitoring of it. *Id.* Because such facts do not show that their Refrigerator "'lacks even the most basic degree of fitness for ordinary use,'" the Castelos' SBCWA claim fails. *Birdsong*, 590 F.3d at 958.

It also fails because, under California law, "'[t]he duration of the implied warranty of merchantability … shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.'" *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1100-01 (S.D. Cal. 2010) (quoting

Cal. Civ. Code. § 1791.1(c)).  The Castelos concede that the Limited Warranty's 1-year coverage applies to their Refrigerator.  FAC ¶46.  Their implied warranty claim is thus coterminous with that 1-year duration, and so also expired after one year – months before their Refrigerator ever allegedly experienced any problems.  This, too, requires dismissal of the Castelos' claim.

    **4.**    **The Implied Warranty Claims of the Castelos, Cecconis, Kauffman Plaintiffs and Mahoneys Fail for Lack of Pre-Suit Notice.**

The implied warranty claims of the Castelos, Cecconis, Kauffman Plaintiffs and Mahoneys also must be dismissed for lack of pre-suit notice.  "[B]efore the buyer initiates a lawsuit," she must provide defendants with "notice with respect to her claims for breach of implied and express warranties." *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 410-11 (E.D. Pa. 2012) (Pennsylvania); *see Swearingen v. Santa Cruz Natural, Inc.*, No. 13-4291, 2016 U.S. Dist. LEXIS 109432, at *32 (N.D. Cal. Aug. 17, 2016) ("The Ninth Circuit has considered and rejected the argument that the filing of a lawsuit may constitute notice for breach of express and implied warranty claims [under California law]."); *Hammer*, 2012 U.S. Dist. LEXIS 40632, at *30 (in New Jersey, "notice is a condition precedent to filing any suit for … breach of implied warranty").  Where a plaintiff "has failed to allege that the condition precedent has been met – sending a pre-litigation notice – Plaintiff's express and implied warranty claims necessarily fail." *Hammer*, 2012 U.S. Dist. LEXIS 40632, at *30 (dismissing express and implied warranty claims).  Because the Castelos, Cecconis, Kauffman Plaintiffs and Mahoneys do not allege providing SEA with notice of a breach of the implied warranty before filing this lawsuit, their implied warranty claims must be dismissed.

    **5.**    **Since the Castelos, Cecconis, Kauffman Plaintiffs and Marino Plaintiffs Allege No Privity with SEA, Their Implied Warranty Claims Fail.**

The Castelos, Cecconis, Kauffman Plaintiffs and Marino Plaintiffs' implied warranty claims fail because they do not allege privity with SEA.  "It is well-settled Florida law that an end user cannot assert a claim for breach of implied or express warranty in the absence of contractual privity

22

between the plaintiff and the manufacturer." *Kaufman v. Pfizer Pharms., Inc.*, No. 02-22692, 2010 U.S. Dist. LEXIS 146552, at *16 (S.D. Fla. Nov. 23, 2010) (dismissing breach of implied warranty claim where plaintiff failed to allege privity with defendant-manufacturer). And the same is true in California and Pennsylvania. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023-24 (9th Cir. 2008) (applying California law and affirming dismissal breach of implied warranty claim where plaintiff failed to allege privity with defendant-manufacturer); *Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 331 n.4 (E.D. Pa. 2009) (applying Pennsylvania law and dismissing breach of implied warranty claim where plaintiff failed to allege privity with defendant-manufacturer). Where, as here, a plaintiff "cannot demonstrate privity of contract[,] District Courts routinely dismiss breach of warranty claims at the motion to dismiss stage." *Kaufman*, 2010 U.S. Dist. LEXIS 146552, at *17. Accordingly, the Castelos, Cecconis, Kauffman Plaintiffs and Marino Plaintiffs' implied warranty claims should be dismissed, since none alleges privity with SEA. *See* FAC ¶¶40-43 (Marino Plaintiffs), 44-47 (Castelos), 55-57 (Cecconis), 58-61 (Kauffman Plaintiffs).

6.      **To the Extent that Plaintiffs Base Their Express or Implied Warranty Claims on UCC Provisions Applicable to Leased Goods, They Fail Since None of the Plaintiffs Allege that They Leased Their Refrigerators (Counts VIII, X, XVI and XVIIII).**

Plaintiffs purport to assert implied warranty of merchantability claims under their home states' UCC provisions *specific to leased goods*. FAC ¶151 (Bianchis – Va. Code § 8.2A-212) (Count VIII); *id.* ¶172 (Marino Plaintiffs – Fla. Stat. § 680.212) (Count X); *id.* ¶240 (Mahoneys – N.J. Stat. § 12A:2A-212) (Count XVI); *id.* ¶272 (Cecconis and Kauffman Plaintiffs – 13 Pa. Cons. Stat. § 2A212) (Count XVIII); *see, e.g.*, N.J. Stat. Ann. § 12A:2A-212(1) ("[A] warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."). As noted above, the Mahoneys also base their express warranty claim in part on UCC lease provisions. *See* FAC ¶¶223-24; *see* Part III.B.3. But Plaintiffs all allege that they

23

*bought* their Refrigerators from various retailers, not that they leased them – much less that they leased them from SEA.  FAC ¶¶22, 40, 44, 48, 55, 58.  Their express and implied warranty claims based on UCC lease provisions thus necessarily fail, and must be dismissed.

**D.    Plaintiffs State No Strict Liability Claims As They Allege Only Economic Damages and Fail to Plead Any Defect, and Because Such Claims Are Precluded by Certain Plaintiffs' Home States' Laws (Counts IV and VI) (*All Plaintiffs*).**

Plaintiffs cannot convert their nonviable breach of express warranty claims into strict liability claims.  First, because Plaintiffs claim only economic losses, strict liability is precluded. Second, Plaintiffs plead no design defect with their Refrigerators.  Third, certain Plaintiffs' claims under the strict liability design defect theory are fundamentally flawed for several reasons specific to their home states' laws.  Finally, because Virginia does not recognize strict product liability claims at all, the Bianchis' claims fail.

**1.    The Economic Loss Doctrine Independently Bars All Plaintiffs' Strict Liability Tort Claims (Counts IV and VI) (*All Plaintiffs*).**

Plaintiffs' strict liability tort claims are precluded by the economic loss doctrine, which prohibits actions in strict liability "where the only injury was 'economic loss' – that is, loss that is neither physical injury nor damage to tangible property."  *Spruce Street Props., Ltd. v. Noblesse*, No. 09-1405, 2011 U.S. Dist. LEXIS 105835, at *32 (W.D. Pa. Sept. 19, 2011) (quotation omitted); *see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (affirming grant to defendant of judgment on the pleadings) (Pennsylvania).

Plaintiffs allege that their Refrigerators' icemakers are somehow defective and that Plaintiffs paid to have them repaired, which are quintessential economic damages.  FAC ¶¶34, 42, 47, 52, 57, 115.  In *Aprigliano v. American Honda Motor Co.*, for example, the court dismissed the claims asserted on behalf of a putative class of consumers of allegedly defective motorcycles.  979 F. Supp. 2d 1331, 1336 (S.D. Fla. 2013).  The plaintiffs there paid to repair their vehicles and subsequently asserted claims in strict liability for design defect under Florida law.  *Id.* at 1334.  But the court

explained that while "[t]he Florida Supreme Court [has] recognized strict products liability as a cause of action," to assert such a claim "plaintiff is required to show an injury to someone or something other than the product itself."  *Id.* at 1336 (citing *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 86 (Fla. 1976)).  Plaintiffs' strict liability claims were thus barred by the economic loss doctrine since "[t]he only damages allegedly sustained by Plaintiffs are economic losses related to the loss of value to their motorcycles, the purchase price of their motorcycles, the loss of use of their motorcycles, and the costs associated with repairing the motorcycles," which were "purely economic losses."  *Id.*  Plaintiffs here likewise plead only economic loss in regard to their Refrigerators.

Importantly, "[w]hether the economic loss rule applies depends on whether property damage has occurred rather than on the *possible* gravity of damages that have not yet occurred."  *Park-Kim v. Daikin Indus.*, No. 15-09523, 2016 U.S. Dist. LEXIS 104248, at *28 (C.D. Cal. Aug. 3, 2016) (emphasis added) (dismissing strict liability claims under economic loss doctrine).  That renders irrelevant Plaintiffs' speculative assertion that "Samsung knew or should have known that the Defects would cause the Class Refrigerators to fail and *could* damage other property," since Plaintiffs have alleged no damage to *anything* other than their Refrigerators.  FAC ¶131 (emphasis added); *see id.* ¶¶34, 42, 47, 52, 57.  Because they allege neither personal injury nor damage to any other property, Plaintiffs' strict liability claims fail as a matter of law.

**2.    Plaintiffs Plead No Design Defect Claim (Count IV) (*Castelos, Cecconis, Kauffman Plaintiffs, Mahoneys and Marino Plaintiffs*).**

Plaintiffs' strict liability claims also fail because they do not allege any particular defect in their Refrigerators' icemakers.  A complaint asserting a strict liability design defect claim must "contain factual allegations about what was in fact defective about the product."  *Witt v. Howmedica Osteonics Corp.*, No. 13-20742, 2013 U.S. Dist. LEXIS 181203, at *4-6 (S.D. Fla. Dec. 30, 2013) (dismissing strict liability claim for failure to plead design defect); *Dilley v. C.R. Bard, Inc.*, No. 14-

25

1795, 2014 U.S. Dist. LEXIS 47066, at *9-10 (C.D. Cal. Apr. 3, 2014) (dismissing product liability claim since plaintiff's "bare assertion" that a product "possessed a defect in its design" "does not in any way identify the alleged design defect that plagues all [of the products]").[16]   For example, in *Gomez v. Pfizer, Inc.*, the court dismissed strict liability claims against defendant manufacturers, in part because the complaint contained "no factual allegations suggesting what was in fact defective about the products."  675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (Florida).  Similarly, the court in *Witt* dismissed a strict liability claim for an allegedly defective prosthesis because "[t]he prosthesis is a complex device; *without specific allegations as to the components which Plaintiff alleges are defective and how those components are defective*, Defendant cannot answer."  2013 U.S. Dist. LEXIS 181203, at *6 (emphasis added).

Accordingly, "[a] complaint must contain more facts as to what exactly Plaintiff alleges is the defect present in the [product], along with sufficient allegations of all other elements of strict liability and design defect."  *Id.*  Neither the FAC nor the TSBs it references, however, identify ***any*** specific defects in the icemakers of Plaintiffs' Refrigerators to support their design defect claim. Because Plaintiffs fail to allege how the design of the Refrigerators is inadequate, their design defect claim fails.  *See, e.g.*, *Witt,* 2013 U.S. Dist. LEXIS 181203, at *6.  TSB 2014 merely references an "improved inspection" in effect since March 2014 for certain Refrigerator models listed, while TSB 2015 lists various customer complaints of "symptoms" allegedly exhibited by certain Refrigerators.  Oliss Decl., Ex. G at 1; *id.*, Ex. H at 1.  In fact, the TSBs also have no bearing upon Plaintiffs' design defect claim because: (1) each Plaintiff apart from the Cecconis affirmatively alleges that he purchased his Refrigerator after the "improved inspection" referenced in the 2014 TSB was implemented; (2) the Refrigerators bought by the Mahoneys and Kauffman

---

[16] *Matalski v. IBM Corp.*, No. 92-1016, 1992 U.S. App. LEXIS 20730, at *22 (4th Cir. Aug. 28, 1992) (Pennsylvania); *Zaza v. Marquess & Nell*, 675 A.2d 620, 627 (N.J. 1996).

Plaintiffs are not covered by TSB 2014; and (3) the Marino Plaintiffs' Refrigerator is not one of the models listed in TSB 2015.  *Compare id.*, Ex. G at 1 (listing models covered by TSB 2014), *and id.*, Ex. H at 1 (listing models covered by TSB 2015), *with* FAC ¶¶22, 40, 44, 48, 58 (listing Plaintiffs' models).  In short, because the FAC nowhere alleges which components in the Refrigerator's icemakers are defective or how those components are defective from a design standpoint, Plaintiffs' design defect claims must be dismissed.

> **3.    Certain Plaintiffs' Design Defect Claims Are Fatally Deficient Under Their Respective State Laws (Count IV).**
>
> > **a.    The Florida and Pennsylvania Plaintiffs' claims fail because they do not allege the Refrigerators are "unreasonably dangerous" (*Cecconis, Kauffman Plaintiffs and Marino Plaintiffs*).**

The Cecconi, Kauffman and Marino Plaintiffs do not plead an essential element of a strict liability design defect claim under Florida and Pennsylvania law: that the subject product contained "a defect which caused the product to be *unreasonably dangerous*."  *Bailey v. Janssen Pharm., Inc.*, 288 F. App'x 597, 607 (11th Cir. 2008) (Florida) (emphasis added); *Moyer v. United Dominion Indus.*, 473 F.3d 532, 538 (3d Cir. 2007) (same, applying Pennsylvania law).  Strict liability in those jurisdictions protects consumers only "from unreasonably dangerous products or from a product fraught with unexpected dangers."  *West*, 336 So. 2d at 86-87 (holding that Florida adopted the doctrine of strict liability as stated by the Restatement (Second) of Torts § 402).

Whether a product is unreasonably dangerous is a "threshold determination" of any design defect claim under Florida and Pennsylvania law.  *Kagan v. Harley Davidson, Inc.*, No. 07-0694, 2008 U.S. Dist. LEXIS 63932, at *19 (E.D. Pa. Aug. 20, 2008) (Pennsylvania) (granting judgment to defendant on design defect claim); *see Schindler v. Sofamor*, 774 A.2d 765, 772 (Pa. Super. Ct. 2000) (courts "have the power to reject design defect claims as a matter of law").  "A product is 'unreasonably dangerous' if its unavoidable dangers outweigh its utility, in light of the availability of precautions that, though not foolproof, might prevent the injury."  *Sansom v. Crown Equip.*

*Corp.*, 880 F. Supp. 2d 648, 660-61 (W.D. Pa. 2012) (Pennsylvania) (internal punctuation omitted).

The Florida and Pennsylvania Plaintiffs, however, do not plead facts showing that their Refrigerators are unreasonably dangerous – which is not surprising, since an allegedly malfunctioning icemaker could hardly be deemed dangerous.  The absence of any allegation that the Refrigerators are "unreasonably dangerous" disposes of the Cecconis, Kauffman Plaintiffs and Marino Plaintiffs' strict liability claims.

      **b.**      **The New Jersey and Pennsylvania Plaintiffs' claims fail since they do not sufficiently allege the existence of an alternative design for their Refrigerators (*Cecconis, Kauffman Plaintiffs and Mahoneys*).**

The Cecconi, Kauffman and Mahoney Plaintiffs' design defect claims must be dismissed under New Jersey and Pennsylvania law for failure to adequately plead the existence of a reasonable alternative design for their Refrigerators' allegedly defective icemakers.  *Johnson v. Draeger Safety Diagnostics, Inc.*, No. 13-2439, 2013 U.S. Dist. LEXIS 101188 at *14 (D.N.J. July 19, 2013) (dismissing design defect claim under New Jersey law for failure to plead alternative design); *Kordek v. Becton, Dickinson & Co.*, 921 F. Supp. 2d 422, 433 (E.D. Pa. 2013) (finding plaintiff failed to prove strict liability claim under Pennsylvania law for failure to establish alternative design for allegedly defective product).  Nowhere do these plaintiffs explain how the Refrigerators could or should have been designed to avoid the alleged icemaker problems.

The *Johnson* case is instructive.  In *Johnson*, the plaintiff alleged that a breathalyzer was defective, and tried to bring strict liability claims against the defendant manufacturer.  2013 U.S. Dist. LEXIS 101188, at *3.  But the court observed that, "to establish a prima facie case of [design] defect, the plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm."  *Id.* at *14.  Dismissing the design defect claim, the court stated that the complaint "does not allege – much less with sufficient factual support – that a reasonable alternative design existed for the [allegedly defective

breathalyzer]." *Id.*  Because the FAC suffers from the same deficiencies, and fails to plead that a reasonable alternative design existed for the Refrigerators, the design defect claims of the Cecconis, Mahoneys and Kauffman Plaintiffs must be dismissed.

### c. The Mahoneys' claims are barred by the New Jersey Products Liability Act.

The Mahoneys' strict liability design defect claims are precluded under the New Jersey Product Liability Act ("NJPLA").  "Because the [NJ]PLA generally subsumes common-law product liability claims, the Third Circuit, [this Court], and New Jersey State courts consistently have dismissed product liability claims based on common-law theories when those theories allege 'harm caused by a product.'"  *Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 516 (D.N.J. 2002) (NJPLA bars common-law product liability claims); *see Karlson v. Dematic Corp.*, No. 16-321, 2016 U.S. Dist. LEXIS 112668, at *11 (D.N.J. Aug. 24, 2016) (strict liability claims arising from alleged product defects "are subsumed entirely by the NJPLA and must be dismissed").  Notably, "the NJPLA's definition of harm covers virtually any economic harm caused by the allegedly defective product."  *Kury v. Abbott Labs., Inc.*, No. 11-803, 2012 U.S. Dist. LEXIS 4862, at *13 (D.N.J. Jan. 17, 2012).  The only harm that the Mahoneys allege is economic harm, which disposes of their claims as subsumed under the NJPLA.  *See* Part III.D.1; FAC ¶¶50-53.

### d. The Castelos plead no claim under either of the design-defect theories recognized under California law.

The Castelos plead no claim under either of the two design defect theories recognized under California law: "a product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if … the benefits of the challenged design do not outweigh the risk of danger inherent in such design."  *Park-Kim* 2016 U.S. Dist. LEXIS 104248, at *37-38.  Thus, in California, "[t]o state a design defect claim, a plaintiff must either describe how the [product] failed to meet the

minimum safety expectations of an ordinary consumer or allege that the risks of the design outweigh the benefits, and then explain how the particular design of the [product] caused [plaintiffs] harm." *Id.* (emphasis omitted).

The Castelos fall far short of this standard, as they do not allege that their icemakers were unsafe, nor would any such assertion be plausible. They have not "allege[d] any facts indicating an ordinary consumer's minimum safety expectations" regarding the Refrigerators. *Id.* at *38. Nor do they "allege that the risks of the [Refrigerator's] design outweigh the benefits," or explain how their Refrigerator's design caused the Castelos' alleged harm. *Id.* at *39. Instead, the Castelos only conclusorily assert that, "at the time the Class Refrigerators left Samsung's control, the foreseeable risks associated with their design exceeded the benefits associated with the design." FAC ¶114. As the Third Circuit has recently emphasized, this Court must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Allen v. Debello*, No. 16-2644, 2017 U.S. App. LEXIS 11405, at *4-5 (3d Cir. June 27, 2017). Since the Castelos fail to allege a safety issue with the Refrigerators' icemaker and offer only generic statements regarding unspecified "risks," their design defect claim must be dismissed. FAC ¶114.

### 4. Virginia Does Not Recognize Strict Products Liability Claims (Counts IV and VI) (*Bianchis*).

The Bianchis' strict products liability claims fail for the simple reason that Virginia "does not permit tort recovery on a strict-liability theory in products-liability cases," except in limited circumstances involving abnormally dangerous activities that plainly are not at issue here. *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 374 S.E.2d 55, 57 n.4 (Va. 1988); *see Harris v. T.I., Inc.*, 413 S.E.2d 605, 609-10 (Va. 1992) (the doctrine of strict liability "is not recognized in Virginia"); *see, e.g.*, *Richmond, Fredericksburg & Potomac R. Co. v. Davis Indus., Inc.*, 787 F. Supp. 572, 576 n.3 (E.D. Va. 1992) ("[B]lasting is considered an abnormally dangerous activity because it is impossible to predict, with certainty, the extent of severity of a blast.").

Because Virginia does not recognize strict liability claims for allegedly defective products, such claims are routinely dismissed by federal courts. Indeed, federal courts have found that assertion of such claims "is, in itself, sufficient grounds for Rule 11 sanctions." *Cross v. S.V.H.H. Cable Acquisition Ltd. P'ship*, No. 07-660, 1995 U.S. Dist. LEXIS 18659, at *8-9 (W.D. Va. Nov. 2, 1995). In *Cross*, the court stated that "Plaintiff's counsel has either failed to do the necessary legal research underlying some of plaintiff's claims or she has failed to appreciate the precedent she found," since it is "clear that Virginia does not recognize strict liability in tort." *Id.* at *9. The court sanctioned plaintiff under Rule 11 for bringing a frivolous claim for strict products liability under Virginia law. *Id.* at *9-10; *see also Runnels v. Norcold, Inc.*, No. 16-713, 2017 U.S. Dist. LEXIS 44698, at *22 (E.D. Va. Mar. 24, 2017) ("Virginia law has not adopted § 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases.") (quotation omitted); *Sanyal v. Toyota Motor N. Am., Inc.*, No. 14-960, 2015 U.S. Dist. LEXIS 5667, at *5 (E.D. Va. Jan. 15, 2015) (dismissing claims as not cognizable under Virginia law); *Sykes v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 214 (E.D. Va. 2008) (granting judgment on the pleadings because "courts applying Virginia law have not applied the doctrine of strict liability in product liability cases," defeating such claims "as a matter of law").

Here, because there is plainly no basis in Virginia law on which the Bianchis can assert strict liability claims against SEA, dismissal of those purported claims is required. And because Plaintiffs' failure-to-warn strict liability claim (Count VI) is asserted only on behalf of the Bianchis, that claim must be dismissed in its entirety.

## E.     The FAC States No Claim for Violation of Any State Statutory Consumer Protection Law (Counts VII, IX, XIV and XVII) (*All Plaintiffs*).

Plaintiffs' consumer protection claims are not supported by any deceptive conduct by SEA, but instead are based solely on their Refrigerators' alleged need for out-of-warranty service. Accordingly, Plaintiffs' allegations do not state a claim for violations of any of the consumer

protection laws cited in the FAC.

> **1.    None of the Statutory Consumer Claims Satisfies Rule 9(b) (Counts VII, IX, XIV and XVII) (*All Plaintiffs*).**

When, as here, a claim sounds in fraud it must meet Rule 9(b)'s heightened pleading standards. *See, e.g.*, *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (applying Rule 9(b) to VCPA claim); *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 U.S. Dist. LEXIS 17088, at *14-15 (S.D. Fla. Feb. 22, 2011) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud.").   The FAC pleads that SEA "intentionally or negligently concealed and suppressed material facts concerning the existence of the Defects in the Class Refrigerators," FAC ¶137, and used "deception, fraud, false pretense, false promise, or misrepresentation with a consumer transaction," *id.* at ¶138.   The FAC also alleges that SEA "knew the Defects were unknown and would not be easily discoverable" by Plaintiffs.   *Id.* at ¶161(b). These allegations plainly sound in fraud, and as such, Plaintiffs were required to plead with particularity their respective claims under the California Consumer Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the New Jersey Consumer Fraud Act ("NJCFA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and the Virginia Consumer Protection Act ("VCPA").   *Wynn's Extended Care, Inc.*, 619 F. App'x at 220 (VCPA); *Gomez v. Carmax Auto Superstores Cal., LLC*, No. 14-9019, 2015 U.S. Dist. LEXIS 8801, at *11 (C.D. Cal. Jan. 22, 2015) (CLRA and UCL); *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *29 (NJCFA); *Llado-Carreno*, 2011 U.S. Dist. LEXIS 17088, at *14-15 (FDUTPA); *Smith v. Berg*, No. 99-1233, 2000 U.S. Dist. LEXIS 4513, at *16 (E.D. Pa. Apr. 10, 2000) (UTPCPL).   To do so, Plaintiffs must allege with particularity the "who, what, when, where and how of the events at issue." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 U.S. Dist. LEXIS 155256, at *8 (D.N.J. Nov. 8, 2016).   But Plaintiffs have not done so.

First, none of the Plaintiffs alleges any pre-purchase communication with SEA, nor provides

essential details regarding the circumstances of their purchase. *See* FAC ¶¶22-27 (Bianchis), 40-41 (Marino Plaintiffs), 44-45 (Castelos), 48-49 (Mahoneys), 55-56 (Cecconis), 58-59 (Kauffman Plaintiffs). While the FAC includes alleged "statements Samsung has made about" the Refrigerators' icemakers, each of those statements is actually from a third-party retailer website (not from Samsung), and, in any event, none of the Plaintiffs alleges personal pre-purchase exposure to any of them. *Id.* ¶70. Only the Bianchis allege pre-purchase exposure to a representation they attribute to SEA: the RF23HC PDF that they allegedly found on the website of retailer Lowe's. *Id.* ¶24. But Plaintiffs allege no facts showing that *any* representation in the RF23HC PDF is false. Indeed, the sole statement from that document that the Bianchis even mention is that the RF23 "would make up to 5.2 pounds of ice per day." *Id.*; *see* RF23HC PDF at 1 ("Our Ice Master makes 5.2 lbs. of ice per day with storage for nearly 2.7 lbs."). The Bianchis do not allege that statement was false at the time they bought their Refrigerator: they do not allege that their Refrigerator was incapable of producing 5.2 pounds of ice daily. Indeed, they allege only that, some 15 months after they bought their RF23, its icemaker began to require periodic "defrost[ing]." FAC ¶¶30, 32. None of those allegations comes close to satisfying Rule 9(b).

The other Plaintiffs' allegations are even scantier. They provide less information regarding their purchases, citing instead to so-called "exemplar online advertisements." *Id.* ¶¶41, 45, 49, 56, 59. But all of those advertisements are from retailers, not SEA, and, in any event, Plaintiffs do not claim that they saw *any* of them prior to their purchases. *See id.* Finally, none of the Plaintiffs satisfies Rule 9(b) with the FAC's generic, conclusory and wholly undifferentiated allegation that "Plaintiffs relied on Samsung's representations in its product descriptions about the easy accessibility of the ice maker and water dispenser and the stated daily ice-making storage and capacity for their respective Class Refrigerators." *Id.* ¶71. In short, none of the Plaintiffs' misrepresentation-based statutory consumer protection claims comports with Rule 9(b).

33

Nor can Plaintiffs skirt that standard by arguing that their claims hinge upon omission: "[w]hen the fraud alleged is based on an omission of material fact, Rule 9(b) requires that plaintiffs plead the type of facts omitted [and] the place in which the omission should have appeared." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 657 (W.D. Va. 2013) (dismissing VCPA claim); *see DiMartino v. BMW of N. Am., LLC*, No. 15-8447, 2016 U.S. Dist. LEXIS 106138, at *19 (D.N.J. Aug. 11, 2016) (Rule 9(b) applies to FDUTPA and other statutory consumer fraud claims predicated upon "allegations of misrepresentation, omission, deception, and unlawful inducing"). "To plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as *provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase* and that failed to include the allegedly omitted information." *Gomez*, 2015 U.S. Dist. LEXIS 8801, at *14-15 (internal citations and punctuation omitted) (emphasis added). Because Plaintiffs cite no actual pre-purchase representations upon which they relied, any claim based on purported omission also fails Rule 9(b).

2. **The Bianchis' VCPA Claim Must Be Dismissed Because They Plead No Misrepresentations or Omission, Do Not Allege Reliance, and Plead No Deliberate, Knowing Acts by SEA (Count VII).**

The Bianchis fail to state a cognizable VCPA claim because they do not allege: (1) any misrepresentations or omissions by SEA, (2) reliance, or (3) a deliberate, knowing act by SEA. Each of these reasons independently compels dismissal, as they are all elements of a VCPA claim. *See, e.g.*, *Weiss v. Cassidy Dev. Corp.*, 63 Va. Cir. 76, 78 (Va. Cir. Ct. 2003) (sustaining defendant's demurrers, and ruling that VCPA claims premised upon "[a]llegations of misrepresentation of fact must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage").

34

First, the Bianchis do not plead an actionable misrepresentation or omission.  As already explained, they have not alleged (1) any communication with SEA, or (2) that the RF23HC PDF contains any representations that are false.  *See* Parts II.A & III.E1.  Nor do the Bianchis identify any statement in either TSB that constitutes a misrepresentation.  *See Robertson v. Ford Motor Co.*, 40 Va. Cir. 231, 233 (Va. Cir. Ct. 1996) (technical service bulletins referenced by plaintiffs "do not constitute misrepresentations" to support VCPA claim).  And TSB 2014 is irrelevant in any event because the Bianchis purchased their Refrigerator after the issue identified in that bulletin was addressed through the manufacturing process.  *See* Part II.D.

Second, the Bianchis' VCPA claim also fails for the independent reason that they do not plead reliance, even though "Virginia courts have consistently held that reliance is required to establish a VCPA claim."  *Gentry v. Hyundai Motor Am., Inc.,* No. 13-30, 2017 U.S. Dist. LEXIS 8609, at *183 (W.D. Va. Jan. 23, 2017) (dismissing VCPA claim where the plaintiff did not allege any representation made by defendant concerning the vehicle upon which he relied in making his purchase).  Here, even if the Bianchis had alleged that TSB 2014 contained a misrepresentation (they do not), they do not allege that they relied on TSB 2014 to make their purchase.  And they could not have relied on TSB 2015, which was issued *after* they bought their Refrigerator.  *Compare* FAC ¶2 (issuance dates for TSB 2014 and TSB 2015), *with id.* ¶22 (date of Bianchis' alleged purchase).

Third, omission-based VCPA claims require plaintiffs to allege facts showing "a knowing and a deliberate decision not to disclose," but the Bianchis have not done so.  *Lambert v. Downtown Garage, Inc.,* 553 S.E.2d 714, 718 (Va. 2001); *see Key v. Lewis Aquatech Pool Supply, Inc.,* 58 Va. Cir. 344, 347 (Va. Cir. Ct. 2002) ("Absent proof of a deliberate, and intentionally deceptive, concealment of the fact that [defendant] did not construct pools depicted in the literature, such nondisclosure does not violate the [VCPA].").  Instead, they rely on "'naked assertion[s]' devoid of

35

'further factual enhancement,'" which are plainly "insufficient" to allege knowledge at the Rule 12 stage.  *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 736 (E.D. Va. 2012) (dismissing VCPA claim) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)).  The Bianchis thus are not aided by their conclusory allegation that SEA "intentionally or negligently concealed and suppressed material facts concerning the existence of the Defects in the Class Refrigerators."  FAC ¶137.  For all of the foregoing reasons, the Bianchis have failed to state a claim under the VCPA.

### 3. The Marino Plaintiffs' FDUTPA Claim Fails Because They Allege No Facts Showing a Deceptive Act, Causation or Actual Damages (Count IX).

The Marino Plaintiffs' FDUTPA claim too must be dismissed.  "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. App. 2006).  But the Marino Plaintiffs allege no facts sufficient to plead any of these elements.

<u>First</u>, apart from legally insufficient conclusory assertions, the Marino Plaintiffs allege no deceptive acts or unfair practices by SEA.  "A deceptive practice is one that is 'likely to mislead consumers,'" while "[a]n unfair practice is 'one that offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Id.*; *see Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.,* No. 10-22153, 2011 U.S. Dist. LEXIS 108720, at *20 (S.D. Fla. Sep. 23, 2011) (dismissing FDUTPA claim where plaintiffs "provide only conclusory allegations with regard to … deceptive acts and unfair practices").  Here, the Marino Plaintiffs only summarily assert that they purchased their Refrigerator "[a]fter searching online" and that SEA failed to disclose alleged defects in the Refrigerator.  FAC ¶¶41, 161.  They nowhere allege exposure to any pre-purchase representations by SEA, citing only to a third-party's "exemplar online advertisement" that is not attributable to SEA and to which the Marino Plaintiffs do not even allege pre-purchase exposure.  *Id.* ¶41; Part II.A.  The Marino Plaintiffs have thus pleaded no deceptive acts or unfair practices by SEA, requiring dismissal.

36

Second, the Marino Plaintiffs also plead no facts establishing causation. To be actionable, "an unfair or deceptive trade practice must be *the cause* of loss or damage to a consumer." *G.M. Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. App. 1998) (emphasis added); *see Kais v. Mansiana Ocean Residences, LLC*, No. 08-21492, 2009 U.S. Dist. LEXIS 25417, at *2 (S.D. Fla. Mar. 26, 2009) (dismissing FDUTPA claim where plaintiff failed to show how defendant's conduct caused him to enter into contract). Nowhere do the Marino Plaintiffs allege any pre-purchase misrepresentations by SEA, or any other deceptive conduct that induced them to buy their Refrigerator. Accordingly, their FDUTPA claim should also be dismissed for failure to plead causation. *See In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (dismissing FDUTPA claim for lack of causation where plaintiff pleaded only "unadorned, the defendant-unlawfully-harmed-me allegation[s]").

Third, the Marino Plaintiffs' FDUTPA claim fails to the extent it alleges non-compensable damages. Under Florida law, repair or replacement damages are not "actual damages," and are not recoverable under the FDUTPA. *In re Ford Tailgate Litig.*, No. 11-2953, 2015 U.S. Dist. LEXIS 159534, at *48 (N.D. Cal. Nov. 25, 2015) (citing *Rollins*, 951 So. 2d at 869) ("Consequential damages, such as repair costs, are not recoverable under the FDUTPA."); *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. App. 2008) (repair and replacement costs are not recoverable under the FDUTPA). The FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Rollins*, 951 So. 2d at 869, 873. And "[m]erely labeling an amount of damages as 'actual' is conclusory and insufficient to maintain a cause of action on its own." *Mantz v. TRS Recovery Servs.*, No. 12-81039, 2012 U.S. Dist. LEXIS 193580, at *7 (S.D. Fla. Oct. 30, 2012). The Marino Plaintiffs thus cannot prevent dismissal with the conclusory allegation that they have suffered "actual damages, including out-of-pocket costs for technician calls, replacement parts, and labor." FAC ¶161(c). For all the

37

foregoing reasons, the Marino Plaintiffs' FDUTPA claim must be dismissed.

### 4.    The Mahoneys' NJCFA Claim Fails to Plead an Ascertainable Loss or Actionable Misrepresentation or Omission (Count XIV).

The Mahoneys' NJCFA claim fails for the additional reason that they allege no facts showing either ascertainable loss or an unlawful practice by SEA, both of which are essential elements of their claim. *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *28.[17]

<u>First</u>, the Mahoneys' claim fails for lack of factual allegations showing an "ascertainable loss." *Id.* (dismissing claim for lack of ascertainable loss). Under the NJCFA, a "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Id.* at *44 (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 743 (N.J. 2009)); *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *10 (D.N.J. Apr. 26, 2007) ("broad and conclusory allegations are not sufficient to demonstrate an ascertainable loss" because the NJCFA requires plaintiffs to "plead specific facts setting forth and defining the ascertainable loss suffered").

In *Hughes*, for example, this Court found no ascertainable loss when plaintiffs alleged that defendant's televisions contained a defect that caused picture quality to worsen over time, and "deprived the Plaintiff[s] and the class members the benefit of their bargain." 2011 U.S. Dist. LEXIS 79504, at *45. The court held that "[t]hese allegations do not sufficiently plead either an out-of-pocket loss by plaintiffs or a showing of loss in value," particularly because plaintiffs "continue to use the Televisions, thus minimizing any possible measurable loss." *Id.* at *45-46. Such is the case here. The Mahoneys allege that, roughly a year after they bought their

---

[17] "Claims under the NJCFA require a plaintiff to allege the following three elements: '(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.'" *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *28 (internal citation omitted).

Refrigerator, its icemaker began "icing-over," and that they had it repaired after their express warranty had lapsed.  FAC ¶¶50-52.  The Mahoneys do not allege that, following this repair, they were unable to use the Refrigerator generally or its icemaker specifically.  And the fact that the Mahoneys paid for the repair also does not constitute ascertainable loss, since such allegations do not show "an out-of-pocket loss, *i.e.* that the products they purchased were worthless." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015).  Indeed, the Mahoneys plainly derived substantial value from their Refrigerator from the time they bought it until present.  *See* FAC ¶¶48-54 (Mahoneys' allegations).  For all these reasons, the Mahoneys have not alleged any ascertainable loss cognizable under the NJCFA.

Second, the Mahoneys fail to plead an unlawful practice by SEA.  The Mahoneys only conclusorily allege that SEA violated the NJCFA by "representing that the Class Refrigerators are of a particular standard quality, and grade when they are not," without pleading what standard, quality or grade the Refrigerators failed to satisfy.  FAC ¶215.  But allegations of an unlawful practice based upon misrepresentation must go beyond "puffery" and into statements "of fact." *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *35 (alleged misrepresentations about "industry leading" technology and superior quality cannot support NJCFA claim); *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) ("You're in good hands with Allstate" slogan did not constitute unlawful practice under NJCFA).   And while the Mahoneys refer to a third-party's "exemplar online advertisement … that is similar or identical to advertisements that the Mahoneys reviewed in making their decision to purchase their [Refrigerator]," they do not plead how that advertisement is misleading, let alone that it is attributable to SEA or that they ever saw it.  *Id.* ¶214.  They therefore have failed to allege any unlawful practice based upon misrepresentation.

Nor have the Mahoneys alleged any such practice based upon omission, which requires them to plead facts showing that SEA "acted with knowledge, and intent." *Hughes*, 2011 U.S. Dist.

LEXIS 79504, at *32-33.   "[B]oilerplate and conclusory allegations will not suffice"; instead, plaintiffs "must accompany their legal theory with factual allegations."   *Id.* at *30 (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002)).   Yet, the Mahoneys only speculate that SEA knew of defects in the Refrigerators because of "consumer complaints posted on internet forums … its internal reporting of claims, and as evidenced by its own acts in issuing [the TSBs]."  FAC ¶213.  This court, however, has consistently rejected the proposition that "a plaintiff can plead knowledge of a defect based upon anonymous internet postings."  *Oliver v. Funai Corp.*, No. 14-04532, 2015 U.S. Dist. LEXIS 169998, at *12 (D.N.J. Dec. 21, 2015) (granting motion to dismiss); *see Rait v. Sears*, No. 08-2461, 2009 U.S. Dist. LEXIS 70217, at *13 (D.N.J. Aug. 10, 2009) (rejecting reliance on internet postings and dismissing complaint).  Nor do the TSBs support an NJCFA claim.  *Alban v. BMW of N. Am.*, No. 09-5398, 2010 U.S. Dist. LEXIS 94038, at *36 (D.N.J. Sept 8, 2010) ("The mere fact that [defendant] issued the TSB lends no support to Plaintiff's consumer fraud claim.").  Although the plaintiff in *Alban*, for instance, argued that the existence of a technical service bulletin demonstrated defendant's knowledge, this Court dismissed the NJCFA claim because the plaintiff did not include "any other information as to when … [defendant] learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers."  *Id*.  Since it rests upon the conclusory and speculative assertion that the TSBs demonstrate that SEA has "long known of the Defects," the Mahoneys' claim suffers from the same flaw in *Alban* – and should therefore share the same fate.  FAC ¶213.

At bottom, the Mahoneys' claim "simply is that [they] brought a product that broke and [they] had to pay for a repair which [they] assert[] [they] should not have had to pay for."  *Rait*, 2009 U.S. Dist. LEXIS 70217, at *13; *see* FAC ¶213 (alleging that SEA "put the onus of the cost and effort of any labor and parts expended in trying to repair the Defects upon consumers").  This

Court has already considered and rejected that same argument, finding that it would "subject to fraud claims … virtually every consumer product company," as "[a]ll any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet." *Rait*, 2009 U.S. Dist. LEXIS 70217, at *13.  Such "allegations do not show behavior that so 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Id.* (quoting *Turf Lawnmower Repair v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995)).  For that and all of the foregoing reasons, Mahoneys' NJCFA must be dismissed.

5. **The Cecconis and Kauffman Plaintiffs' UTPCPL Claim Is Barred by the Economic Loss Doctrine, and Fails to Allege Reliance, Causation, or Deceptive Conduct (Count XVII).**

The Cecconis and Kauffman Plaintiffs do not plead a cognizable claim under the UTPCPL for several reasons.[18]   First, their claims are barred under the economic loss doctrine, which precludes plaintiffs from recovering "economic losses," since "a manufacturer in a commercial context has no duty … to prevent a product from injuring itself." *Werwinski*, 286 F.3d at 671; *see also Murphy v. State Farm Mut. Auto Ins. Co.*, No. 16-2922, 2016 U.S. Dist. LEXIS 125841, at *15 (E.D. Pa. Sept. 15, 2016) (dismissing UTPCPL claim under economic loss doctrine).  In *Werwinski*, the Third Circuit dismissed plaintiffs' UTPCPL claim under the economic loss doctrine because "exempting [statutory fraud] claims from the effects of the economic loss doctrine would virtually nullify the doctrine." 286 F.3d at 681.  As discussed above, the Cecconis and Kauffman Plaintiffs allege only economic losses. *See* Part III.D.1; FAC ¶¶52, 57, 264; *see also Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-1020, 2016 U.S. Dist. LEXIS 75403, at *41 (W.D. Pa. June 9, 2016)

---

[18] The essential elements of a UTPCPL claim are: "1) [plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose; 2) [plaintiff] suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL." *Baynes v. George Mason Funeral Home, Inc.*, No. 09-153, 2011 U.S. Dist. LEXIS 59220, at *10-11 (W.D. Pa. June 2, 2011).

(recovery for "diminished value of the roof and structure" was "barred by the economic loss doctrine").  Accordingly, their UTPCPL claims are barred and must be dismissed.

Second, the Cecconis and Kauffman Plaintiffs have not pled justifiable reliance, even though "the Pennsylvania Supreme Court has 'categorically and repeatedly' stated that a private plaintiff pursuing a UTPCPL claim must prove justifiable reliance, and it has not recognized any exceptions to that requirement." *DeHart v. HomEq Serv. Corp.*, 679 F. App'x 184, 188 n.9 (3d Cir. 2017) (affirming dismissal of UTPCPL claim); *see Grant v. Kingswood Apts.*, No. 01-1523, 2001 U.S. Dist. LEXIS 23927, at *9 (E.D. Pa. Oct. 15, 2001) (dismissing UTPCPL claim).  Moreover, where, as here, a plaintiff asserts a UTPCPL claim under multiple subsections of the statute, he must plead "reliance and causation with respect to all subsections of the UTPCPL." *Santana Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005).  Because "reliance cannot be presumed, 'dismissal of a UTPCPL claim is proper if the plaintiff does not allege actions pursued on the basis of the alleged wrongful conduct.'" *Monck v. Progressive Corp.*, No. 15-250, 2015 U.S. Dist. LEXIS 47801, at *13 (M.D. Pa. Apr. 13, 2015) (dismissing UTPCPL claim for failure to plead reliance); *Hunt v. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (presumption-of-reliance argument is "inconsistent with Pennsylvania case law").

For example, the UTPCPL claim in *Monck* was dismissed because the plaintiff presented "only conclusory allegations of alleged wrongdoing and her related reliance," and she did not "identify the false or fraudulent statements allegedly made … or how she relied upon them … how confusion was created" or "how the advertisement was misleading."  2015 U.S. Dist. LEXIS 47801, at *15-16; *see In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 548 (D.N.J. 2004) (dismissing UTPCPL claim for failure to allege reliance and deceptive conduct).  Likewise, the Cecconis and Kauffman Plaintiffs' only allegations of reliance are wholly conclusory – and would necessarily have to be so since they allege no exposure to any pre-purchase representation by SEA.  *See* Part

42

II.A & III.E.1; FAC ¶264 (alleging that Cecconis and Kauffman Plaintiffs "suffered an ascertainable loss and actual damages as a direct and proximate result of Samsung's representations and its concealment of and failure to disclose material information").  Nor can they rely on TSB 2014 or TSB 2015 to salvage their UTPCPL claims.  *See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013) (dismissing putative class action UTPCPL claim for, *inter alia*, failure to plead reliance, notwithstanding that manufacturer issued five TSBs regarding plaintiffs' vehicles).  This failure independently dooms their UTPCPL claim.

Third, the Cecconis and Kauffman Plaintiffs also fail to allege deceptive conduct under the UTPCPL.  To show deceptive conduct, "a plaintiff must show reliance on an alleged material misrepresentation with resulting harm."  *K-Dur*, 338 F. Supp. 2d at 548 (dismissing UTPCPL claim for failure to allege reliance and deceptive conduct).  The Cecconis' and the Kauffman Plaintiffs' failure to allege reliance also undercuts any allegation that SEA deceived them.  Nor can they save their claim with "[m]ere recitations of statutory language."  *Sherk v. Countrywide Home Loans, Inc.*, No. 08-5969, 2009 U.S. Dist. LEXIS 68628, at *16, *30 (E.D. Pa. Aug. 6, 2009) (dismissing UTPCPL claim); *see* FAC ¶259 (conclusorily reciting UTPCPL prohibited actions listed in statute). For all the foregoing reasons, their UTPCPL claims must be dismissed.

**6.      The Castelos Allege No Facts Showing Violation of California's Consumer Fraud Statutes (Counts XI and XII).**

Because the Castelos fail to state claims under the CLRA or UCL, both of those California statutory consumer fraud claims must be dismissed.

**a.      The Castelos' CLRA claim fails for lack of misrepresentation and reliance, nor can they seek damages under the CLRA for failure to provide SEA with prelitigation notice.**

"Three elements are necessary to state a claim under the CLRA: misrepresentation, reliance, and damages."  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016).  In addition, a plaintiff must also "provide notice of his or her claims at least thirty days before filing an 'an action

43

for damages' under the CLRA." *Janda v. T-Mobile, USA, Inc.*, No. 05-03729, 2008 U.S. Dist. LEXIS 93399, at *20 (N.D. Cal. Nov. 7, 2008) (quoting Cal. Civ. Code § 1782(a)). Because the Castelos allege no facts showing a misrepresentation or reliance, their claim fails. Moreover, any action for damages under the CLRA also fails for lack of prelitigation notice.

To begin, the Castelos allege no actionable misrepresentation or omission. To plead an actionable misrepresentation, a plaintiff must "at the very least describe some specific statements, state where or on what medium those statements were made, and reveal how Plaintiff accessed them." *Yastrab v. Apple Inc.*, No. 14-1974, 2015 U.S. Dist. LEXIS 37119, at *14 (N.D. Cal. Mar. 23, 2015). But the Castelos allege no exposure to *any* pre-purchase representation by SEA. Instead, they include a so-called "exemplar advertisement" from Sears.com in their allegations, but (1) that advertisement is from a retailer, not SEA, (2) the Castelos allege no pre-purchase exposure to it, and (3) there is no factual allegation that the advertisement contains any misrepresentation. FAC ¶45. This defeats any misrepresentation-based CLRA claim.

It also prevents the Castelos from pleading reliance: "The Court questions how one can act in reliance on a statement one does not see, read, or hear." *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1022 (N.D. Cal. 2013). Indeed, there are no factual allegations that the Castelos relied on any representation by SEA in buying their Refrigerator. Instead, they allege vaguely and without attribution that "their Samsung model came highly recommended," and that "[t]he sales people [at Pacific Sales Kitchen & Home] further extolled Samsung's great reputation." FAC ¶45. In short, the Castelos' own allegations show that they never relied on any representation by SEA.

This remains true even if the Castelos try to base their CLRA claim on a purported omission, for, to do so, they would have had to plead facts showing "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Myers v. BMW of N. Am., LLC*, No. 16-412, 2016 U.S. Dist. LEXIS 140768, at *17 (N.D. Cal. Oct. 11, 2016). For example,

44

the CLRA and UCL claims of the plaintiff in *Myers* were dismissed because plaintiff could not

"show that, had the omitted information been disclosed, she would have been aware of it":

> Myers has alleged no facts indicating that she saw or relied on any BMW materials
> or advertisements.  Although she makes general allegations that BMW advertises its
> vehicles, she does not allege that she herself viewed any of these materials…. Myers
> has not alleged any facts to indicate that she would have been aware of a disclosure
> if one was made.

*Id*. at \*17-19; *see Herremans v. BMW of N. Am., LLC*, No. 14-02363, 2014 U.S. Dist. LEXIS

145957, at \*63 (C.D. Cal. Oct. 3, 2014) (dismissing CLRA and UCL claims because plaintiff did

not "adequately [plead] reliance").  Like the plaintiff in *Myers*, the Castelos also cannot show

reliance upon a purported omission since they allege no pre-purchase exposure to any

representations by SEA.

Finally, even if the Castelos had alleged facts showing misrepresentation or omission and

reliance (they plainly have not), they are precluded from seeking damages under the CLRA for

failure to provide the required statutory notice.  Cal. Civ. Code § 1782(a).  The CLRA requires

consumers to "notify the person alleged to have … committed methods, acts or practices declared

unlawful by the [CLRA]" at least "[t]hirty days or more prior to the commencement of an action for

damages."  *Id*. § 1782(a)(1).  Because "the clear intent of the [notice requirement] is to provide and

facilitate pre-complaint settlements of consumer actions," courts hold that it requires "literal

application," that failure to provide timely notice is fatal to a claim for damages, and that such

failure cannot be cured by amendment.  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950

(S.D. Cal. 2007) (dismissing CLRA damages claim with prejudice for lack of requisite notice);

*Janda*, 2008 U.S. Dist. LEXIS 93399, at \*20-21 (same).  Although the Castelos seek a variety of

damages under the CLRA, they do not allege compliance with the 30-day pre-suit notice

requirement.  FAC ¶¶185-87.  And for good reason: they did not notify SEA until more than three

weeks *after* the FAC was filed.  *See* Oliss Decl., Ex. I (letter dated June 21, 2017 from Plaintiffs'

Counsel to SEA).  That disposes of any CLRA damages claim that the Castelos purport to bring.

> **b.**     **The Castelos' UCL claim must be dismissed for lack of pre-purchase exposure to representations by SEA, and also because the Castelos allege no facts satisfying any of the UCL's three prongs.**

"[T]o state a UCL claim, a 'plaintiff must establish that the practice is either unlawful (*i.e.*, is forbidden by law), unfair (*i.e.*, harm to victim outweighs any benefit) or fraudulent (*i.e.*, is likely to deceive members of the public).'"  *Janda*, 2008 U.S. Dist. LEXIS 93399, at *22.  Moreover, as a threshold matter, a plaintiff must also allege personal, pre-purchase exposure to a misrepresentation in order to that a UCL claim.  *Hall v. SeaWorld Entm't, Inc.*, No. 15-660, 2015 U.S. Dist. LEXIS 174294, at *9, 17 (S.D. Cal. Dec. 23, 2015).  The Castelos meet none of these requirements.

As a threshold matter, just as the Castelos' CLRA claim must be dismissed for lack of facts alleging pre-purchase exposure to representations by SEA, so too does their UCL claim.  *See id.* at *17 (dismissing UCL claims where plaintiffs did not allege they "actually saw or read *any* advertising or statements" (emphasis in original)).  Again, this is true even if the Castelos try to base their UCL claim on a purported omission.  *Id.* at *20 ("[T]he FAC fails to plead how, if the allegedly omitted material had been disclosed, the Plaintiffs would have been aware of it and behaved differently."); *Myers*, 2016 U.S. Dist. LEXIS 140768, at *17-19 (same).  The Castelos' UCL claim thus fails.

Their UCL claim also independently fails under each of the statute's three operative theories.  First, under its 'unlawful' prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999).  A claim under the unlawful prong must be dismissed "[w]here a plaintiff cannot state a claim under the 'borrowed' law."  *Hall*, 2015 U.S. Dist. LEXIS 174294, at *52; *Smith v. LG Elecs. USA, Inc.,* No. 13-4361, 2014 U.S. Dist. LEXIS 31577, at *28 (N.D. Cal. Mar. 11, 2014) (dismissing unlawful-prong UCL claim that "is

46

entirely derivative of the other consumer protection claims"). Because the Castelos can show no violation of any other law – including the CLRA – their unlawful-prong UCL claim must be dismissed.

Second, a plaintiff cannot state a claim under the UCL's 'unfairness' prong "merely by making conclusory allegations." *Park-Kim v. Daiken Indus.*, No. 15-9523, 2016 U.S. Dist. LEXIS 158056, at *42 (C.D. Cal. Nov. 14, 2016). Yet that is all that the Castelos have done: they merely recite the UCL's statutory language instead of providing specific factual allegations as to how SEA's conduct constituted "unfair business practices." FAC ¶193. Accordingly, their UCL unfairness-prong claim must be dismissed.

Third, to state a claim under the UCL's 'fraudulent' prong, the Castelos must allege facts showing that SEA's purported misrepresentations: "(1) were relied upon by the [Castelos]; (2) were material; (3) influenced the [Castelos'] decision to purchase the product; and (4) were likely to deceive members of the public." *Yastrab*, 2015 U.S. Dist. LEXIS 37119, at *19 (internal punctuation omitted). Moreover, "[t]he sufficiency of a UCL fraud claim is routinely analyzed with a corresponding CLRA claim," and if a plaintiff's CLRA claim fails to identify the specific fraudulent statements relied upon, he also "fail[s] [to] state a claim under the 'fraudulent' prong of the UCL." *Id.*; *Myers*, 2016 U.S. Dist. LEXIS 140768, at *17-19 (same). As explained above, the Castelos have not alleged exposure to or reliance on any purported misrepresentation or omission by SEA, and their allegation regarding purported harm to "consumers" is wholly conclusory and insufficient as a matter of law. FAC ¶193; *Park-Kim*, 2016 U.S. Dist. LEXIS 158056, at *42. For these reasons, the Castelos also state no claim under the UCL's fraudulent prong.

**F.    Plaintiffs Fail to Plead Key Elements of Fraudulent Concealment, Much Less Satisfy the Particularity Required Under Rule 9(b) (Count V) (*All Plaintiffs*).**

To make out a claim for fraudulent concealment, Plaintiffs must allege facts showing "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Semeran v. Blackberry Corp.*, No. 15-750, 2016 U.S. Dist. LEXIS 11864, at *12 (D.N.J. Feb. 2, 2016).  In addition, "[a] claim of fraudulent concealment requires a plaintiff to plead the existence of a duty to disclose." *Perez v. JPMorgan Chase Bank, N.A.*, No. 14-2279, 2016 U.S. Dist. LEXIS 24689, at *15-16 (D.N.J. Feb. 29, 2016) (Cecchi, J.); *see Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) ("New Jersey courts will not imply a duty to disclose in a case alleging fraudulent concealment.") (internal quotations omitted).  And pleadings that rely upon "conclusory allegations fail to state a claim for fraud," and also fail to satisfy Rule 9(b).  *Perez*, 2016 U.S. Dist. LEXIS 24689, at *17; *Semeran*, 2016 U.S. Dist. LEXIS 11864, at *12-13.  Because Plaintiffs have not alleged facts sufficient under either Rule 9(b) or Rule 12(b)(6), their fraudulent concealment claim must be dismissed.

### 1.    Plaintiffs' fraudulent concealment claim does not satisfy Rule 9(b).

"[C]laims for fraudulent concealment must meet the heightened pleading standards of Rule 9(b)." *Semeran*, 2016 U.S. Dist. LEXIS 11864, at *12-13.  Where a claim "contains no factual allegations specifying the who, what, where, when, and how of any misrepresentations that [a defendant] allegedly made," it must be dismissed. *Zuniga*, 2016 U.S. Dist. LEXIS 155256, at *15; *see Vassallo v. Bank of N.Y.*, No. 15-3227, 2016 U.S. Dist. LEXIS 47895, at *20 (D.N.J. Apr. 8, 2016) (dismissing "conclusory" fraudulent concealment claim).  Such is the case here.

As already explained above, Plaintiffs flunk Rule 9(b) by alleging *no* facts showing pre-purchase exposure to any misrepresentation.  *See* Part II.A & III.E.1.  Nor can they satisfy the rule with mere "'labels and conclusions, and a formulaic recitation of a cause of action's elements.'" *Silipena v. Am. Pulverizer Co.*, No. 16-711, 2017 U.S. Dist. LEXIS 44212, at *5 (D.N.J. Mar. 27, 2017) (quoting *Twombly*, 550 U.S. at 555) (dismissing fraudulent concealment claim).  Yet that is all Plaintiffs have to offer.  They rely on formulaic incantation of the elements of fraudulent

concealment, together with generic, self-serving and inflammatory assertions that SEA "knew" of the RF23's purported defects, "concealed" facts regarding the same, and otherwise engaged in "knowing, intentional, malicious, … reckless disregard of the rights of Plaintiffs."  FAC ¶¶118, 120, 124; *see also* Part III.F.2 (such failures also doom Plaintiffs' fraudulent concealment claim under Rule 12).  Because, aside from such boilerplate, Plaintiffs allege no facts showing any fraud by SEA, their fraudulent concealment claim fails Rule 9(b) and must be dismissed.

> **2.      Plaintiffs plead no facts showing that SEA engaged in knowing, intentional misrepresentation, that SEA owed Plaintiffs a duty to disclose, or that Plaintiffs relied upon any false representation by SEA.**

Plaintiffs' claim also fails under Rule 12 because they have not alleged that SEA (1) made any false representations, (2) possessed pre-purchase knowledge of the Refrigerators' purported defects, (3) had intent to conceal or (4) had a duty to disclose to Plaintiffs.  Nor have Plaintiffs alleged facts showing that they relied upon any misrepresentation by SEA.  Each of those failings independently disposes of their claim.

> **a.      Plaintiffs allege no false representation by SEA.**

Fundamentally, <u>no</u> Plaintiff alleges facts showing any false representation by SEA.  Indeed, the <u>only</u> pre-purchase representations that <u>any</u> Plaintiff attributes to SEA are those in the RF23HC PDF that the Bianchis allegedly found on the website of retailer Lowe's.  *See* Part II.A.  But the Bianchis allege no facts showing that <u>any</u> representation in the RF23HC PDF is false.  Indeed, the sole statement from that document that the Bianchis mention is that the RF23 "would make up to 5.2 pounds of ice per day."  FAC ¶24; *see* RF23HC PDF at 1 ("Our Ice Master makes 5.2 lbs. of ice per day with storage for nearly 2.7 lbs.").  The Bianchis do not allege that statement was false at the time they bought their Refrigerator: they do not allege it could not produce 5.2 pounds of ice daily.  They allege only that, some 15 months after purchase, their Refrigerator's icemaker began to require periodic "defrost[ing]."  FAC ¶¶30, 32.  The Bianchis' dissatisfaction with such alleged

late-onset, periodic upkeep does not render fraudulent the sole statement to which they alone allege pre-purchase exposure.   Because neither they nor any of the other Plaintiffs allege any misrepresentation by SEA, their fraudulent concealment claim necessarily fails.

### b.   Plaintiffs allege no facts showing that SEA had pre-purchase knowledge of the Refrigerators' purported defects.

Plaintiffs' claim also fails for lack of factual allegations showing that "Samsung had actual knowledge" of the Refrigerators' purported defects prior to Plaintiffs' purchases.   FAC ¶67. Instead, Plaintiffs merely speculate that "Samsung should have been aware" based upon baseless and speculative assertions that unnamed consumers allegedly made "requests for warranty service" at unspecified points in time.   *Id.* ¶68.   Such speculation is plainly insufficient, even under Rule 12.

Nor can Plaintiffs impute knowledge based upon TSB 2014 and TSB 2015.   *Id.* ¶66.   As explained above, TSB 2014 is irrelevant because: (1) no Plaintiff save the Cecconis bought his Refrigerator prior to the updated manufacturing process of March 2014, which addressed the "gap" discussed in that TSB; and (2) the Cecconis do not allege that their Refrigerator had the gap identified in that TSB, or that any of their purported experiences with their Refrigerator had any relation to it.   *See* Part II.D.   As for TSB 2015, issued on July 17, 2015, it plainly cannot support an inference that SEA was aware of the alleged defects at the time of the *earlier* purchases by the Bianchis, the Castelos, the Kauffman Plaintiffs or the Marino Plaintiffs.   *Compare* Oliss Decl., Ex. H at 1 (July 17, 2015 issuance date), *with* FAC ¶¶22, 40, 44, 58 (Plaintiffs' purchase dates).   In any event, TSB 2015 neither acknowledges nor shows knowledge of any purported "defect"; instead, it was issued to provide guidance to authorized service personnel to enable effective servicing of certain Samsung-brand refrigerators.   *See* Oliss Decl., Ex. H at 1 ("This information is published for informational purposes only and intended for use only by personnel qualified for the specific tasks depicted.").   This Court, moreover, has expressly rejected the use of TSBs to establish knowledge for fraud: "the Court is hesitant to view technical service bulletins, or similar advisories, as potential

admissions of fraudulent concealment of a defect…. Accepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place." *Alban*, 2011 U.S. Dist. LEXIS 26754, at *36-37 (granting dismissal, and rejecting argument that TSB demonstrated "knowledge").

This Court has also squarely rejected Plaintiffs' attempt to impute knowledge with unverified postings allegedly made by third parties on non-Samsung websites: "imputing knowledge of a defect to a manufacturer based upon an internet posting would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery. All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet." *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *12 (internal punctuation omitted) (dismissing fraudulent concealment claim with prejudice); *see Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 U.S. Dist. LEXIS 70945, at *16 (D.N.J. June 2, 2015) (New Jersey) ("to show knowledge of a defect, consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models" of a product). This Court thus dismisses fraudulent concealment claims that, as here, rest upon complaints by "unknown bloggers" that purportedly "appear on the websites of third-parties such as Amazon and Wal-Mart, and [where] Plaintiffs have provided no indication that Defendants viewed or would have viewed those websites." *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *11; *see* FAC ¶72 (alleging no facts showing that SEA was ever aware of any purported internet posts). And even if Plaintiffs could rely upon third-party internet complaints (they plainly cannot), none of the postings that they cite <u>actually addresses their Refrigerator models</u>. *Compare* FAC ¶72 (internet complaints), *with id.* ¶¶22, 40, 44, 48, 55, 58 (listing Plaintiffs' Refrigerators). Plaintiffs' failure to show that SEA know of purported defects also dooms their claim.

### c.    Plaintiffs allege no facts showing SEA had intent to conceal.

Plaintiffs' claim must be dismissed for the additional reason that they allege no facts showing that SEA intended to conceal the Refrigerators' purported defects, and otherwise engaged in "[d]eliberate" fraud. *Semeran*, 2016 U.S. Dist. LEXIS 11864, at *12. Instead, Plaintiffs again rely on broad, conclusory declarations of alleged wrongdoing that are devoid of any factual detail. *See, e.g.*, FAC ¶124 (stating that "Samsung's conduct was … intentional"); *see also* Part III.F.1 (Plaintiffs' conclusory pleading likewise runs afoul of Rule 9(b)). Plaintiffs' failure to show deliberate intent by SEA to conceal any alleged defect independently requires dismissal.

### d.    Plaintiffs do not allege reliance on any SEA misrepresentation.

Dismissal is also required because no Plaintiff alleges facts showing reliance on any SEA representation. Indeed, no Plaintiff, save only the Bianchis, even alleges pre-purchase *exposure* to any representation by SEA, much less *reliance* on the same. *See* Part II.A & III.E.1. As for the Bianchis, they plead no reliance upon the only representation that they attribute to SEA: the statement in the RF23HC PDF about their Refrigerator's daily ice production. *Weske v. Samsung Elecs. Am., Inc.*, 42 F. Supp. 3d 599, 607-08 (D.N.J. 2014) ("To prevail on a common law fraud claim under New Jersey law, a plaintiff must allege that he or she actually received and considered the misstatement or omission, however indirectly uttered, before he or she completed the transaction." (internal punctuation omitted)). In fact, the Bianchis make clear that their purchasing decision was driven by other factors, affirmatively and unambiguously alleging that they "chose to purchase the Samsung model <u>because</u> *it was on sale at Home Depot at what Plaintiffs believed was a substantial savings*." FAC ¶26 (underlining and emphasis added). They also admit that their purchase was influenced by additional factors: namely, their belief that the Refrigerator was "high quality," "high-end," "fit properly" in their kitchen, "met the Bianchis' kitchen counter spacing requirements," and was "recommended" by a Home Depot salesperson. *Id.* ¶¶24-25.

As for the RF23HC PDF's representation that the refrigerator "would make up to 5.2 pounds of ice per day," the Bianchis do not allege that they actually relied upon it; instead, they vaguely identify it as a "selling point." *Id.* ¶24.  But even if the FAC is taken to allege that the Bianchis actually relied upon that "selling point," there is, again, *no* allegation that their Refrigerator's icemaker was incapable of making "up to 5.2 pounds of ice per day." *Id.*  Nor can the Bianchis or any of the other Plaintiffs have 'relied' upon any putative representation that their Refrigerators' icemaker would never require periodic defrosting or upkeep – since SEA *never made* any such representation, whether in the RF23HC PDF or otherwise.  Without reliance upon any purported misrepresentation by SEA, Plaintiffs' fraudulent concealment claim fails.

> **e.    Plaintiffs have not shown that SEA owed them a duty to disclose.**

Finally, Plaintiffs allege no facts showing that SEA owed them a duty to disclose, "which is a required element of [fraudulent concealment]." *Kowalsky v. Deutsche Bank Nat'l Trust Co.*, No. 14-7856, 2015 U.S. Dist. LEXIS 133284, at *26 (D.N.J. Sept. 30, 2015) (Cecchi, J.); *see id.* at *27-28 ("[T]here can be no fraud … if the defendant was under no obligation to disclose the information in the first place." (internal punctuation omitted)).  "The duty to disclose arises only in the context of (1) fiduciary relationships, (2) relationships where one party expressly places trust in the other party, and (3) relationships formed through transactions that inherently require trust and confidence to protect the parties." *Id.* at *28.  Importantly, a duty to disclose does <u>not</u> arise where, as here, the parties are engaged in an "arm's length" transaction. *Katsiavrias v. Cendant Corp.*, No. 06-4465, 2009 U.S. Dist. LEXIS 25744, at *13 (D.N.J. Mar. 30, 2009).  In particular, such duty does not arise between consumers and the manufacturer or distributor of the products they buy. *See Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *27 (where manufacturers did not do "'anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance,' the manufacturers had no duty to disclose the alleged [product] defect" (quoting *Green v. G.M.*

*Corp.*, No. A-2831-01T5, 2003 N.J. Super. Unpub. LEXIS 13, at *25 (N.J. Super. Ct. July 10, 2008))).

This Court's *Stevenson* case is instructive.  The *Stevenson* plaintiff bought a car and then sued Mazda for fraudulently concealing the car's allegedly defective valve timing mechanism. 2015 U.S. Dist. LEXIS 70945, at *2-3, 23.  In support, plaintiff asserted "that Mazda had a duty to disclose, because '[Plaintiff] trusted and relied on Mazda.'"  *Id.* at *25.  This Court rejected that argument: "the mere fact of that trust is insufficient to show a special relationship requiring a duty to disclose.  Rather, for a duty to disclose to arise, one party must expressly repose[] a trust and confidence in the other; or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case [must be] necessarily implied."  *Id.* at *26 (internal punctuation omitted).  But, as here, "Plaintiff does not allege that he 'expressly' reposed trust in Mazda – that is, Plaintiff does not claim that he informed Mazda that he was relying on their representations."  *Id.*; *see* FAC ¶84 (conclusorily alleging that Plaintiffs "relied on Samsung's affirmative and/or ongoing concealment").  This Court also rejected the argument that "Mazda had a duty to disclose the defect because the knowledge of the defect was 'known and/or accessible only to Mazda,' and that 'Mazda knew that these concealed facts were not known or reasonably discoverable to Plaintiff.'"  *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *27 (internal citation omitted).  As this Court explained, an allegation of "superior knowledge … does not create a duty to disclose."  *Id.* at *28.  For all those reasons, the Court found no duty to disclose and dismissed plaintiff's fraudulent concealment claim.  *Id.* at *30.

SEA likewise had no duty to disclose here.  Plaintiffs admit they bought their Refrigerators in unremarkable, arm's-length consumer transactions with various retailers. *See* Part II.C.  They allege no facts showing that they had a fiduciary relationship with SEA, that they had "expressly place[d] trust in" SEA, or that buying a consumer appliance from a retail store constitutes a

"transaction[] that inherently require[s] trust and confidence." *Kowalsky*, 2015 U.S. Dist. LEXIS 133284, at *28; *see* FAC ¶118 (declaring conclusorily that "Samsung had a duty to disclose the Defects to Plaintiffs"). Nor, as *Stevenson* shows, can Plaintiffs conjure such a duty by alleging that "Samsung was in a superior position than Plaintiffs" because "Samsung … knew that Plaintiffs … had no knowledge that the Class Refrigerators were defective." FAC ¶120; *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *28. At bottom, SEA plainly had no duty to disclose to Plaintiffs, which alone is independently dispositive of their fraudulent concealment claim.

**G.     Plaintiffs' Claim for Declaratory and Injunctive Relief Must Be Dismissed (Count III) (*All Plaintiffs*).**

Plaintiffs purport to advance a claim for declaratory and injunctive relief, *see* FAC ¶¶101-08 (Count III), but, in fact, they fail to state a claim for either.

Declaratory Relief. The Declaratory Judgment Act allows federal courts to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Plaintiffs, however, ask this Court for a declaration that "these Class Refrigerators have a common defect(s) in their design/manufacture," and that "this common defect poses a serious risk to consumers and the public." FAC ¶¶104-05. Such a request misconstrues the purpose of the Act, which is limited to declaration of the "rights, duties, and status or other legal relations between the parties." *Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp.*, No. 11-1054, 2011 U.S. Dist. LEXIS 147901, at *18 (M.D. Fla. Nov. 16, 2011); *see Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) ("The idea behind the [Declaratory Judgment] Act was to clarify legal relationships."). When proposed declarations "declare[] no rights … [or] duties or … nothing with respect to the legal relationship between the parties," district courts do not issue them. *Nationwide*, 2011 U.S. Dist. LEXIS 147901, at *18. Because such is the case here, dismissal is required.

Second, "'a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Mladenov*, 124 F. Supp. 3d

55

at 379 (quoting *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008)).  For example, this Court dismissed a declaratory judgment claim where plaintiffs sought a declaration that defendant's bread was not freshly baked, yet where plaintiffs "have indicated no intention to purchase bread and bakery products from Defendants' stores.  The opposite appears true."  *Id.*  The same is true here: Plaintiffs repeatedly assert that they would not have bought their Refrigerators had they known of the purported defects, and allege *no* intent to buy any of the Samsung-brand refrigerators for which they seek class certification.  FAC ¶¶26, 91, 121, 143, 162, 182, 192, 217, 233, 264.  Indeed, Plaintiffs have expressly asked this Court to issue an injunction requiring SEA to "*immediately discontinu[e]* the manufacturing, production, marketing, distribution, and sale" of the Refrigerators. *Id.* ¶108 (emphasis added).  Plaintiffs' failure to allege future injury is independently dispositive.

Third, the Declaratory Judgment Act creates neither substantive rights nor an independent cause of action: it "does not enlarge the jurisdiction of the federal courts" and "is procedural only." *Vaden v. Discovery Bank*, 556 U.S. 49, 70 n.19 (2009).  This Court therefore dismisses such claims where the relief sought is effectively "redundant" or "duplicative" of other substantive claims that a plaintiff has filed, such as for breach of warranty or consumer statutory fraud violations.  *Mladenov*, 124 F. Supp. 3d at 370; *Q+Food LLC v. Mitsubishi Fuso Truck of Am., Inc.*, No. 14-6046, 2015 U.S. Dist. LEXIS 99824, at *18-19 (D.N.J. July 30, 2015) (dismissing duplicative declaratory relief claim).  Because Plaintiffs have brought many claims overlapping their request for a declaration, their declaratory relief claim should be dismissed as redundant.

<u>Injunctive Relief</u>.  Plaintiffs also purport to assert a 'claim' for injunctive relief, but "[i]njunctive relief is not a cause of action, … only a remedy."  *Monclava v. U.S. Bank N.A.*, No. 15-7383, 2016 U.S. Dist. LEXIS 106127, at *10 (D.N.J. Aug. 11, 2016) (New Jersey).  And even if injunctive relief was an actual claim (it is not), it would still fail here.  For one, the FAC pleads no facts satisfying any of the "well-established" elements for an injunction, namely: "(1) that

[Plaintiffs] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).   That failure is punctuated by the fact that Plaintiffs rely exclusively on boilerplate allegations of "serious risk to consumers and the public" that find *no* support in their allegations regarding the Refrigerators' purported defect.  FAC ¶105.

In addition, "to obtain injunctive relief a plaintiff [must] show that he is likely to suffer future injury from the defendant's illegal conduct." *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 550 (D.N.J. 2014).  Yet, Plaintiffs allege *no* facts showing that, absent an injunction, there is a "'real or immediate threat that [they] will be wronged again.'"  *Id.* (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  As discussed above, the FAC makes manifest that Plaintiffs have no intention to purchase any of the Samsung-brand refrigerators for which they seek class certification.  For all these reasons, Plaintiffs' 'claim' for injunctive relief must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety, with prejudice.

Dated: April 24, 2018                    Respectfully submitted,

**TOMPKINS, MCGUIRE, WACHENFELD**          **SQUIRE PATTON BOGGS (US) LLP**
**& BARRY LLP**

                                         *s/ Sean P. Neafsey*

James J. O'Hara                           Sean P. Neafsey
3 Becker Farm Road                        One Riverfront Plaza
Fourth Floor                              1037 Raymond Blvd., Suite 600
Roseland, New Jersey 07068                Newark, New Jersey 07102
Tel. 973-623-7041                         Tel. 973-848-5600
Fax 973-623-7780                          Fax 973-848-5601
johara@tompkinsmcguire.com                sean.neafsey@squirepb.com

                                         Philip M. Oliss (admitted *pro hac vice*)
                                         Bruce Khula (admitted *pro hac vice*)

57

4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Tel. 216-479-8500
Fax 216-479-8780
philip.oliss@squirepb.com
bruce.khula@squirepb.com

Attorneys for Defendant SAMSUNG
ELECTRONICS AMERICA, INC.